## DUDEWICZ v NORRIS SCHMID, INC

Docket No. 93029. Argued March 31, 1993 (Calendar No. 3 April).
Decided July 27, 1993.

Michael L. Dudewicz brought an action in the Saginaw Circuit
Court against Norris Schmid, Inc., alleging that the termina-
tion of his employment because he refused to drop criminal
assault and battery charges against a fellow employee that
arose out of a dispute over the handling of Norris Schmid's
business violated the Whistleblowers' Protection Act as well as
public policy. The court, Robert S. Gilbert, J., granted summary
disposition for the defendant with respect to the public policy
claim and entered a directed verdict for the defendant with
respect to the Whistleblowers' Protection Act claim. The Court
of Appeals, CAVANAGH, P.J., and D. E. HOLBROOK, JR., and
CYNAR, JJ., reversed, finding that retaliatory discharge violates
the public policy of encouraging victims of crime to file crimi-
nal complaints, and that the Whistleblowers' Protection Act
applies to violations by fellow employees, as well as employers
(Docket No. 126212). The defendant appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice
CAVANAGH, and Justices LEVIN, RILEY, GRIFFIN, and MALLETT,
the Supreme Court held:

The Whistleblowers' Protection Act applies to an employee
who reports a violation of a law arising out of a dispute over
the handling of company business occurring during business
hours, regardless of whether the criminal actor is the employer
or a fellow employee.

1. The Whistleblowers' Protection Act applies to the dis-
charge of employees who report a violation or a suspected
violation of the law either by their employers or fellow employ-
ees. Reporting a fellow employee for violating the Criminal
Code because of a dispute over the handling of company busi-
ness is not so different from traditional notions of whistleblow-
ing closely connected with employment, such as Health Code
and safety violations or illegal labor practices. Nothing in the

REFERENCES
Am Jur 2d, Wrongful Discharge § 57.
See ALR Index under Whistleblowers.

WPA or its legislative analysis limits protection only to those employees who report violations of law by their employer; rather, the explicit language of the analysis and the broad scope of the statute strongly suggest that the WPA was intended to protect employees who report violations by an employer or fellow employees. Remedial statutes, such as the WPA, are to be liberally construed in favor of the persons intended to be benefited. The trial court erred in directing a verdict on this issue.

2. Remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative. At common law there was no right to be free from being fired for reporting an employer's violation of the law. Thus, the remedies provided by the WPA are exclusive, not cumulative. The specific prohibition against retaliatory discharge is determinative of the viability of a public policy claim. A public policy claim is sustainable only where there is no applicable statutory prohibition against discharge in retaliation for the conduct at issue. Because the WPA provides relief for reporting illegal activity by a fellow employee, the public policy claim is preëmpted.

Affirmed in part and reversed in part.

Justice BOYLE, dissenting, stated that the employer's demand that the employee withdraw the criminal complaint against his co-worker or be fired, rather, was an alleged violation of a clearly established public policy of this state. The plaintiff did not engage in activity protected under the Whistleblowers' Protection Act when he filed a criminal complaint against a co-worker. The WPA was enacted to protect employees who report corrupt or illegal business practices or violations of law by an employer or co-worker that result from the conduct of the employer's business.

192 Mich App 247; 480 NW2d 612 (1991) affirmed in part and reversed in part.

LABOR RELATIONS — WHISTLEBLOWERS' PROTECTION ACT — VIOLATIONS BY FELLOW EMPLOYEES.

The Whistleblowers' Protection Act applies to an employee who reports a violation of a law arising out of a dispute over the handling of company business occurring during business hours, regardless of whether the criminal actor is the employer or a fellow employee (MSA 15.361 *et seq.*; MSA 17.428[1] *et seq.*).

*Jensen, Smith & Gilbert, P.C.* (by *Peter C. Jensen*), for the plaintiff.

*Smith, Bovill, Fisher, Meyer & Borchard, P.C.*
(by *Robert A. Jarema*), for the defendant.

Amicus Curiae:

*Mark Brewer (Paul Denenfeld,* of counsel), for
ACLU Fund of Michigan.

BRICKLEY, J. The issue before us is whether the
Whistleblowers' Protection Act (WPA)[1] prohibits an
employer from discharging an employee who files
a criminal complaint against a fellow employee for
an assault that arose out of a dispute over the
handling of the employer's business, during busi-
ness hours, and at the site of employment. We are
also asked to decide whether the public policy
exception to the employment at will doctrine ap-
plies to the facts of this case. In a case of first
impression for this Court, we find that the WPA
applies and prohibits discharge under these facts.
We also find that the WPA preëmpts any public
policy claim arising out of the same facts. While
summary disposition for the defendant on the
public policy claim was proper, the trial court
improperly granted a directed verdict for the de-
fendant on the WPA claim. Therefore, the judg-
ment for the directed verdict is reversed, and the
case is remanded for trial of the WPA claim.

I

Plaintiff, Michael L. Dudewicz, worked as a
parts manager for an automobile dealership,
Norris Schmid, Inc., defendant. On the morning of
November 4, 1987, Dudewicz attempted to obtain
warranty service for a customer who, as a whole-
sale buyer, did a lot of business with Norris

---

[1] MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*

Schmid. To get better service for the customer, Dudewicz enlisted the aid of one of the dealership's owners, Samuel Norris. Together, the two men sought the assistance of the service manager, Dick Boehm, who agreed to do the work for the customer under warranty.

After Norris left the service area, Dudewicz alleged that the service manager reached over the service counter and grabbed Dudewicz by the collar and tried to pull him across the counter. Dudewicz alleged that Boehm told him never to bring the owner into the service area again. During the course of this fracas, Dudewicz alleged that the service manager tore buttons off his shirt, broke a gold chain from around his neck, and left fingerprints on his neck. That same day, Dudewicz told Norris Schmid's new car sales manager about the incident and also filed criminal charges with the Midland County Prosecutor, alleging assault and battery.

Dudewicz testified that upon entering work the morning of December 1, 1987, he was called to Norris' office and told to drop the criminal charges against the service manager or be fired. He was also told to leave the dealership. Dudewicz left the premises because he believed he had been fired; he also believed he could regain his job if he agreed to drop the criminal charges. Dudewicz then contacted an attorney who counseled him to return to work. When Dudewicz did return to the dealership on December 3, 1987, Norris told him the dealership considered him to have quit and that he had to leave the premises. Dudewicz argued that he had not quit, but had, in fact, been fired. Further, Dudewicz refused to leave unless provided with a letter of termination. Norris refused to comply with this request and called the police to escort Dudewicz from the premises.

Subsequently, Dudewicz filed a two-count complaint, alleging that his termination violated Michigan's Whistleblowers' Protection Act as well as public policy. Following discovery, Norris Schmid sought and received summary disposition under MCR 2.116(C)(8), on the ground that the public policy argument failed to state a claim upon which relief could be granted.[2] Then, after hearing proofs on the remaining count, Norris Schmid sought and received a directed verdict, under MCR 2.515, on the ground that Dudewicz failed to show that it had violated the Whistleblowers' Protection Act. The trial court denied a motion to reconsider this verdict.

Dudewicz appealed as of right in the Court of Appeals, which reversed. 192 Mich App 247; 480 NW2d 612 (1991). The Court first addressed the public policy claim and found that Dudewicz had alleged an implied cause of action for retaliatory discharge because " 'the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment.' " *Id.* at 251, quoting *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692, 696; 316 NW2d 710 (1982). On the basis of federal precedent, *Pratt v Brown Machine Co,* 855 F2d 1225 (CA 6, 1988), the Court was satisfied that the ability to file a criminal complaint as the victim of a crime was a right conferred by a "well-established legislative enactment." Therefore, Norris Schmid's discharge vio-

---

[2] A conversation between the trial court and counsel for Dudewicz indicated that the attorney believed the trial judge dismissed the public policy count on the ground that the WPA provided an exclusive remedy. The attorney asked the judge to reconsider his decision, but the judge refused to do so, at least until after hearing Dudewicz' proofs. Once the proofs had been offered and the trial judge had granted a directed verdict for Norris Schmid, the judge informed the parties that he had dismissed the public policy claim, not because the WPA provided an exclusive remedy but, because the claim was not applicable to the case.

lated a public policy that encouraged victims of crime to file complaints. Otherwise, the Court believed, "[t]o allow the discharge of an at-will employee because of a choice to file a criminal complaint against a fellow employee would force a choice between justice and livelihood. It is the public policy of this state to protect its citizens from such an onerous choice." 192 Mich App 253.

The Court also noted that, as Norris Schmid argued, Dudewicz might have had to choose the WPA as his exclusive remedy over his public policy claim. Because, however, the trial court "expressly stated that it had not granted the motion for summary disposition on the basis that the [WPA] provides the exclusive remedy," the Court ruled that "consideration of the applicability of the public policy exception to the facts of this case [was] still proper . . . ." 192 Mich App 253.

Next the Court considered Dudewicz' claim that his discharge was in violation of the WPA because he was fired for filing a criminal complaint, alleging that he had been assaulted and battered by a fellow employee. In ruling that the WPA prohibited such conduct, the Court expressly rejected an earlier Court of Appeals holding, *Dickson v Oakland Univ,* 171 Mich App 68; 429 NW2d 640 (1988), that required, as an element of the applicability of the WPA, that the person accused of breaking the law be the employer. The Court found that the language of the act itself and the accompanying legislative analysis contained no such limitation and, in fact, indicated that violations by fellow employees, as well as by employers, were to be considered within the scope of the WPA. The Court therefore concluded that the trial judge erred in granting both a directed verdict and summary disposition for Norris Schmid.

II

In deciding whether the trial court erred in directing a verdict for the defendant, we must first decide whether the WPA was intended to protect employees who are fired for reporting violations of the law by fellow employees. Norris Schmid contends that the WPA protects only those employees who are fired for reporting their employers' violations of law. There is, however, no such limitation in either the express language of the WPA or the analysis of the House Bill that spawned the WPA.

Section 2 of the WPA provides in full:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362; MSA 17.428(2).][3]

A plain reading of this provision reveals that protection is not limited to employee reports of violations by employers. On its face, the provision only seems to apply to the discharge of an em-

---

[3] As stated, the report, or the attempted report, must be made to a "[p]ublic body." This concept encompasses many entities, including "[a] law enforcement agency or any member or employee of a law enforcement agency." MCL 15.361(d)(v); MSA 17.428(1)(d)(v). There is no dispute that the Midland County Prosecutor is a "public body" for purposes of the WPA.

ployee who "reports . . . a violation or a suspected violation of a law . . . ." *Id.*

Moreover, the legislative analysis of the WPA supports the conclusion that its provisions protect employees who report violations of law by either their employers or fellow employees. The analysis recognizes the problem the WPA was designed to alleviate as the inability to combat corruption or criminally irresponsible behavior in the conduct of government or large businesses. House Legislative Analysis, HB 5088, 5089 (February 5, 1981). The analysis goes on to say that "[t]he people best placed to observe and report violations are the employees of government and business, but employees are naturally reluctant to inform on an employer *or a colleague.*" *Id.* (emphasis added). It appears that, at the time the bill was considered, the Legislature intended the protection to apply to employee reports of any and all violations of law by either employers or fellow employees.

In any event, we find that the activity at issue here, reporting a fellow employee's violation of the state's Criminal Code because of a dispute over the handling of company business, is not so different from traditional notions of whistleblowing. Typically, the activity involves the violation of laws more closely connected with the employment setting, such as Health Code and safety violations, *Tyrna v Adamo, Inc,* 159 Mich App 592; 407 NW2d 47 (1987), or illegal labor practices, *Hopkins v Midland,* 158 Mich App 361; 404 NW2d 744 (1987), but there is no limitation in the statute to these types of activities. Moreover, the illegal activity is typically engaged in by an "employee," even if that employee also happens to own the company. See *Tyrna, supra.* On the basis of these observations, we are satisfied that the events and individuals involved in this case are consistent with those

activities and individuals contemplated by the
WPA.

In deciding that the WPA did not apply to the
facts of this case, the trial judge relied upon a
relatively recent Court of Appeals decision, *Dick-
son v Oakland Univ, supra.* The trial judge be-
lieved himself to be bound by the *Dickson* Court's
ruling that the WPA applied only to employees
fired for reporting violations of law by their em-
ployers. We agree with the Court of Appeals, that
there is no such limitation on the applicability of
the WPA.

The plaintiff in *Dickson* worked as a police
officer for the defendant's department of public
safety. 171 Mich App 69. Before his dismissal, the
plaintiff alleged that he was repeatedly criticized
for enforcing the law against university students.
*Id.* After he was allegedly assaulted by one stu-
dent, the plaintiff requested that the defendant
seek an arrest warrant against that student. *Id.*
The defendant refused, and the plaintiff was subse-
quently discharged. *Id.* at 69-70. The trial court
and Court of Appeals rejected the plaintiff's WPA
claim, however, because the plaintiff only reported
the wrongdoing of students to the defendant. *Id.* at
71. Nothing in the plaintiff's complaint alleged
that the defendant-employer violated any law or
that the plaintiff was fired for reporting the defen-
dant's violation of law to a higher authority. *Id.*

In support for limiting the WPA to reports of
violations of law by employers, the *Dickson* Court
quoted, inter alia, the same portion of the legisla-
tive analysis as quoted above. See 171 Mich App
70-71. However, as stated above, nothing in either
the WPA itself or its legislative analysis limits
protection only to those employees who report
violations of law by their employer. On the con-
trary, the explicit language of the analysis and the

broad scope of the statute strongly suggest that the WPA was intended to protect employees who report violations by either employers or fellow employees. Indeed, such an interpretation is also supported by the rule of statutory construction that remedial statutes, such as the WPA, are to be liberally construed in favor of the persons intended to be benefited. See *Bierbusse v Farmers Ins Group,* 84 Mich App 34, 37; 269 NW2d 297 (1978); *Holmes v Haughton Elevator Co,* 75 Mich App 198, 200; 255 NW2d 6 (1977), aff'd 404 Mich 36; 272 NW2d 550 (1978). Simply stated, the *Dickson* Court erred in limiting the applicability of the WPA to employee reports of violations of law by employers.[4]

Admittedly, a strictly literal interpretation of the statute without an analysis of legislative intent arguably could lead to an interpretation that would bar discharge of an employee for reporting a crime by anyone under any circumstances. See *Tyrna,* 159 Mich App 599 (the Court ruled that the WPA "provides a remedy to *an* employee terminated for reporting to *any* public body a violation of *any* law or regulation of this state, a political subdivision, or the United States") (emphasis added). However, this is not the case and these are not the facts to test the outer limits of this rather broad statute. In concluding that it was intended to bar a discharge of an employee for reporting a crime by a fellow employee under the circumstances of this case does not begin to test those limits. In saying that, we note that not only was

---

[4] In any event, *Dickson* is clearly distinguishable on its facts. Forgetting for a moment who broke the law, the plaintiff in *Dickson* reported the violation only to his employer, not to a public body within the meaning of the WPA. On *these* facts, the panel correctly found that the WPA was inapplicable. While its ruling was correct, the panel made an unfortunate comment in dicta stating that the purpose of the WPA was to protect only those employees who reported violations of law by their employers. It is this comment that is erroneous.

this a crime alleged to have been committed by a fellow employee, but the alleged crime arose out of a work incident at the work site. It is, therefore, very much within the employer-employee setting.

Accordingly, we find that the trial court erred in granting a directed verdict on this issue.

III

The Court of Appeals reversed the trial court's grant of summary disposition on the public policy claim because the trial court did not dismiss the claim on the basis of the fact that the WPA provided an exclusive remedy. While acknowledging the fact that the WPA was probably exclusive, the Court found that, because the trial court did not discuss this issue, it could not do so either. The Court erred in its rationale, however. Because the parties preserved the issue of public policy preëmption and because the trial court failed to deal with the issue,[5] the Court of Appeals was not precluded from dealing with the question whether the public policy claim was preëmpted by the WPA claim. The Court of Appeals, should have considered this issue and should have found that any public policy claim was preëmpted by the application of the WPA.

As a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative. *Pompey v General Motors Corp,* 385 Mich 537, 552-553; 189 NW2d 243 (1971). At common law, there was no right to be free from being fired for reporting an employer's violation of the law. *Covell v Spengler,* 141 Mich App 76, 83; 366 NW2d

---

[5] As noted in n 2, the trial court dismissed the public policy claim as inapplicable and, therefore, did not discuss the exclusivity of the WPA.

76 (1985). The remedies provided by the WPA, therefore, are exclusive and not cumulative. *Shuttleworth v Riverside Hosp,* 191 Mich App 25, 27; 477 NW2d 453 (1991).

In *Suchodolski v Michigan Consolidated Gas Co, supra,* this Court recognized that there was an exception to the general rule that either party to an employment at will contract could terminate the agreement at any time for any or no reason. The exception is based on the principle that "some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* at 695. We also found that these restrictions on an employer's ability to terminate an employment at will agreement are most often found in explicit legislation. *Id.* The WPA is such legislation. *Id.*[6]

The existence of the specific prohibition against retaliatory discharge in the WPA is determinative of the viability of a public policy claim. In those cases in which Michigan courts have sustained a public policy claim, the statutes involved did not specifically proscribe retaliatory discharge. Where the statutes involved did proscribe such discharges, however, Michigan courts have consistently denied a public policy claim. Compare *Trombetta v Detroit, T & I R Co,* 81 Mich App 489; 265 NW2d 385 (1978) (the public policy claim was sustained where the defendant was discharged for refusing to manipulate and adjust pollution control reports), and *Sventko v Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976) (the claim was sustained where the defendant was discharged for filing a lawful workers' compensation claim), with *Covell v Spengler, supra* (the public policy claim

[6] Also noted were the Civil Rights Act, MCL 37.2701; MSA 3.548(701), the Handicappers' Civil Rights Act, MCL 37.1602; MSA 3.550(602), and the Occupational Safety and Health Act, MCL 408.1065; MSA 17.50(65).

was denied where the defendant also was sued under the WPA and the statute proscribed discharge in retaliation for the employee's complaints to the labor board concerning overtime pay), and *Ohlsen v DST Industries, Inc,* 111 Mich App 580; 314 NW2d 699 (1981) (the claim was denied where the employee also sued under MIOSHA provisions that prohibited discharge in retaliation for the employee's exercise of statutory rights). A public policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue. As a result, because the WPA provides relief to Dudewicz for reporting his fellow employee's illegal activity, his public policy claim is not sustainable.

## IV. CONCLUSION

For the reasons set forth above, the trial court erred in granting Norris Schmid's motion for a directed verdict. The WPA applies to an employee who reports a violation of a law arising out of a dispute over the handling of company business and occurring during business hours, regardless of whether the criminal actor is the employer or a fellow employee. Accordingly, the trial court's judgment on the directed verdict was erroneous. The trial court properly granted summary disposition with regard to the public policy claim, however, because the WPA preëmpts that claim.

The judgment of the Court of Appeals is affirmed with respect to the WPA claim, and reversed with respect to the public policy claim. The case is remanded for trial of the WPA claim.

CAVANAGH, C.J., and LEVIN, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BRICKLEY, J.

BOYLE, J. I respectfully dissent from my colleagues' conclusion that the Whistleblowers' Protection Act (WPA)[1] prohibits discharge under these facts. In my view, the plaintiff was not engaging in protected activity as defined by the WPA. However, because plaintiff has alleged that his employment was conditioned on his agreement to refuse to prosecute criminal activity of which he had knowledge, he has stated a claim for which relief may be granted for wrongful discharge in violation of public policy. I would affirm the decision of the Court of Appeals and remand this case to the trial court for further proceedings.

I

A prima facie case of retaliation under the Whistleblowers' Protection Act requires a showing that the plaintiff was engaged in protected activity as defined by the act. The act provides in relevant part: "An employer shall not discharge . . . an employee . . . because the employee . . . reports . . . a violation . . . of a law or regulation or rule . . . to a public body . . . ."[2]

The act expressly protects employees who report violations of law, but it is less than clear regarding both the identity of the lawbreaker and the circumstances under which the violation of law must occur. The statute does not state who the employee must suspect as having violated the law, nor does it expressly describe the setting in which the violation must have occurred or the relationship the illegal conduct must bear to the conduct of business. In short, the statute is ambiguous.

[1] MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*

[2] MCL 15.362; MSA 17.428(2).

A

It is axiomatic that if the language of a statute
is unambiguous, this Court must read and apply it
as written. Where the statute is ambiguous, "the
object of the statute [and] the harm which it is
designed to remedy" are relevant indications of
intent. *In re Forfeiture of $5,264,* 432 Mich 242,
248; 439 NW2d 246 (1989).

Applying these principles, I agree with the ma-
jority's conclusion that restricting the protection
afforded by the WPA only to reports of employer
violations of law would be contrary not only to the
intent of the Legislature, but also to the language
of the statute. The plain language of the act
provides that an "Employer includes an agent of
an employer . . . ."[3] An agent of an employer very
well may be a co-worker of the employee who is
reporting a violation. Furthermore, as the major-
ity notes, the legislative analyses support this
interpretation. The analyses recognize that "em-
ployees are naturally reluctant to inform on an
employer *or a colleague.*"[4]

B

I disagree with the majority's conclusion that
the WPA applies to protect the activity in this case.
That conclusion imparts an expansive interpreta-
tion to the statute that is not supported by the
statutory purpose or the context in which the
statute was enacted. As amicus curiae, ACLU Fund
of Michigan, points out, Michigan was the first
state to grant statutory protection to employees
who reported an employer's illegal activity. The
act was, in part, the Legislature's response to an
incident of accidental chemical contamination of

[3] MCL 15.361(b); MSA 17.428(1)(b).

[4] House Legislative Analysis, HB 5088, 5089, First Analysis,
April 17, 1980; Second Analysis, February 5, 1981.

livestock feed.[5] Employees of the chemical company that had mistakenly substituted poisonous fire retardant for nutritional supplements "were warned not to volunteer information about the . . . accident to investigators or else they would be fired."[6]

I agree with amicus curiae and the majority that the act is designed both to encourage employees to assist in law enforcement and to protect those employees who engage in whistleblowing activities. However, this observation fails to take account of a significant focus of the statute noted in the bill analyses. A whistleblowing employee alerts the public to the employer's, or a co-worker's, "corruption or criminally irresponsible behavior *in the conduct of government or large businesses . . . .*"[7] I conclude that the ambit of the WPA protects activity involving a report by an employee of an employer's or co-worker's illegal business practices or other violations of law, regulation, or rule that occur as a result of the conduct of business. In other words, where the conduct of business itself violates a law, statute, or regulation, an employee's report of that illegal conduct is protected activity.

In the instant case, the criminal act committed by the plaintiff's co-worker did not involve corrupt or illegal business practices of the employer or co-worker, or result from the conduct of the employer's business, and is therefore not within the umbrella of activity protected under the WPA. Because the plaintiff was not engaged in activity protected under the WPA, I would reverse the decision of the

[5] Barcia, *Update on Michigan's Whistleblowers' Protection Act,* 1988 Det Col L R 1, 1-2. Senator James A. Barcia introduced and sponsored the bill that became the Whistleblowers' Protection Act. *Id.* at 2.

[6] *Id.* at 2.

[7] House Legislative Analyses, n 4 *supra.* (Emphasis added.)

Court of Appeals. The trial court correctly granted defendant's motion for directed verdict.

## II

I would further hold that plaintiff's activity is protected as a matter of the fundamental public policy of this state as expressed in its Penal Code. Therefore, I would affirm the decision of the Court of Appeals on this question and remand this case for trial.

Where an employment relationship is at will, either party to the relationship "may terminate it at any time for any, or no, reason." *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692, 695; 316 NW2d 710 (1982). However, where the employee is discharged on grounds that "are so contrary to public policy," the discharge may be actionable, even though the employment relationship allowed termination for no reason at all. *Id.*

While "the Court has acted with circumspection in carrying out public policy exceptions to the 'at will' doctrine[,]" *Clifford v Cactus Drilling Corp, 419* Mich 356, 367; 353 NW2d 469 (1984) (WILLIAMS, C.J., dissenting),[8] grounds for discharge that are contrary to public policy have been found in statutes that expressly prohibit discharge of employees who exercise rights or observe duties created by statute, or implied from legislative expressions of policy or an employee's exercise of a right conferred by a well-established legislative enactment. *Suchodolski,* 412 Mich 695-696.

The plaintiff in an action for wrongful discharge in violation of public policy must show that the "plaintiff engaged in protected activity. The activi-

[8] The federal courts have also been reluctant to infer a cause of action where Congress has not expressly created one. See 19 Wright, Miller & Cooper, Federal Practice & Procedure, § 4514, p 241.

ty's protection may stem either from a constitutional or statutorily granted right or from an obligation favored by statutory policy." *Clifford,* 419 Mich 368 (WILLIAMS, C.J., dissenting), citing Schlei & Grossman, Employment Discrimination Law, ch 15, p 534 (Washington, D.C.: Bureau of National Affairs, 1983).

Courts addressing similar questions have inferred claims for wrongful discharge from " 'sufficient legislative expression' of a policy that prohibits an employer from conditioning employment upon the employee's agreement to conceal or stifle an investigation into a crime." *Pratt v Brown Machine Co,* 855 F2d 1225, 1237 (CA 6, 1988). Thus, where an employee informed law enforcement officials that one of his co-workers may have violated the criminal code, agreed to assist in the investigation and trial, and was later fired for his role in the investigation, the employee had made out a claim of retaliatory discharge in violation of public policy. In *Palmateer v Int'l Harvester Co,* 85 Ill 2d 124, 132; 421 NE2d 876 (1981), the Illinois Supreme Court noted:

> There is no public policy more basic, nothing more implicit in the concept of ordered liberty . . . than the enforcement of a State's criminal code. . . . There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens. . . .
>
> No specific constitutional or statutory provision requires a citizen to take an active part in the ferreting out and prosecution of crime, but public policy nevertheless favors citizen crime-fighters. "Public policy favors the exposure of crime, and the coöperation of citizens possessing knowledge thereof is essential to effective implementation of that policy. Persons acting in good faith who have probable cause to believe crimes have been com-

mitted should not be deterred from reporting them by . . . fear . . . ." [Quoting *Joiner v Benton Community Bank,* 82 Ill 2d 40, 44; 411 NE2d 229 (1980).]

The public policy favoring encouraging citizens' coöperation in the prosecution of crime obtains even more forcefully when a citizen is deterred from coöperation with the police solely because the consequence will be loss of gainful employment.

The Legislature has declared that assault and battery is a crime.[9] Victims of crime are encouraged to report crime and, if the report is timely made, may be compensated for out-of-pocket losses for personal injuries incurred as a result of the crime.[10] Finally, the compounding statute, MCL 750.540e; MSA 28.808(5), even if not applicable where the underlying activity is a misdemeanor, is additional and further evidence for finding sufficient legislative expression of a policy prohibiting an employer from conditioning employment on an employee's refusal to prosecute a crime.

I would hold that the plaintiff's assertion that he was the victim of an assault by a coemployee and that he was terminated for the reason that he refused to forswear redress in the criminal justice system stated a claim for wrongful discharge in violation of Michigan's public policy.[11] "To allow the discharge of an at-will employee because of a choice to file a criminal complaint against a fellow employee would force a choice between justice and livelihood. It is the public policy of this state to protect its citizens from such an onerous choice." 192 Mich App 247, 253; 480 NW2d 612 (1991).

---

[9] MCL 750.81; MSA 28.276.

[10] MCL 18.351 *et seq.*; MSA 3.372(1) *et seq.*

[11] I, of course, do not suggest that an employer has no remedy against a disruptive employee, or that an employer does not have a good-faith defense to a claim filed in this recognized cause of action.

III

In sum, the plaintiff did not engage in activity protected under the WPA when he filed a criminal complaint against a co-worker. The WPA was enacted to protect employees who report corrupt or illegal business practices or violations of law by an employer or co-worker that result from the conduct of the employer's business. The employer's demand that the employee withdraw the criminal complaint against his co-worker or be fired was an alleged violation of a clearly established public policy of this state.[12]

Thus, I would affirm the decision of the Court of Appeals regarding the public policy claim, and reverse the decision of the Court of Appeals with respect to the Whistleblowers' Protection Act claim.

[12] Given the conclusions that the plaintiff has stated a claim for wrongful discharge under the public policy exception to the employment at will doctrine, and that the defendant's motion for directed verdict was correctly granted on the basis of the Whistleblowers' Protection Act because plaintiff was not engaged in protected activity under the WPA, it is unnecessary to decide whether the WPA provides plaintiff's exclusive remedy.