259 F.Supp.2d 1 (2003)
In Re: VITAMINS ANTITRUST LITIGATION
This Document Relates to:
Kellogg Co.
v.
F. Hoffman La Roche Ltd. et al.
No. 99-197(TFH).
MDL No. 1285.
United States District Court, District of Columbia.
March 14, 2003.
Daniel S. Mason, Craig C. Corbitt, Joseph M. Bell, Sara M. Scott, Peter F.
Burns, Zelle, Hofmann, Voelbel, Mason, & Gette, LLP, San Francisco, CA, for Kellogg Co.
Thomas M. Mueller, Michael 0. Ware, Mayer, Brown, Rowe & Maw, New York City, Philip J. Kessler, Amy K. Hunt, H. William Burdett, Jr., Butzel Long, P.C., Detroit, MI, for Lonza Inc., Lonza AG.
Peter E. Halle, Jonathan M. Rich, Thomas J. Lang, J. Clayton Everett, Jr., Morgan, Lewis & Bockius, LLP, Washington, DC, for Degussa Corp. & Degussa AG.

MEMORANDUM OPINION
THOMAS F. HOGAN, Chief Judge.

RE: Plaintiff Kellogg Company's Motion in Limine to Preclude the Evidence that Kellogg Passed on Any Indirect-Purchaser Overcharges
Pending before the Court is Plaintiff Kellogg Company's ("Kellogg") Motion in Limine to exclude all evidence pertaining to any purported downstream pass through of defendants' conspiratorial overcharges as irrelevant under the Michigan Antitrust Reform Act. Kellogg claims that evidence of any purported pass through of overcharges is irrelevant under the Michigan Antitrust Reform Act as it is neither an affirmative defense nor an element of the plaintiffs damages claim. The remaining defendants in this action, Lonza and Degussa, oppose Kellogg's motion. Upon careful consideration of the motion, opposition, reply and oral arguments, the Court will deny Kellogg's motion as evidence of a pass through of overcharges may be relevant to defendants' argument that Kellogg did not suffer "actual damages" as required under Michigan antitrust law. The Court will not require that Kellogg prove a lack of downstream pass through as an element of its damages claims.

*2 I. BACKGROUND
In this action Kellogg has alleged a massive, long-running international conspiracy among defendants and their co-conspirators to artificially inflate the prices of certain vitamins and vitamin products, allocate shares of the vitamin market among the defendants and their co-conspirators, predetermine sales volume in the vitamin industry, eliminate competition, limit supply, and commit other practices constituting violations of both federal antitrust laws (Kellogg's direct purchaser claims) and the Michigan Antitrust Reform Act (MARA), Mich. Comp. Laws § 445.771 et seq (Kellogg's indirect purchaser claims).
The instant motion in limine concerns only Kellogg's indirect purchaser or "passon" claims under state law. Specifically, the motion requires the Court to determine whether, as Kellogg argues, evidence that Kellogg passed-on its indirect purchaser overcharges is irrelevant under the MARA, or whether the MARA allows for a pass through defense.
In order to succeed on the indirect claims under the MARA, plaintiffs must prove at trial that defendants charged higher prices to its direct purchasers than it would have in a competitive environment and that the overcharge or some portion thereof was passed through the chain of distribution to indirect purchasers. See A&M Supply Co. v. Microsoft Corp., 252 Mich.App. 580, 654 N.W.2d 572, 584 (2002).
The relevant Michigan law is intertwined with important federal precedent concerning antitrust suits by private plaintiffs. Therefore, it is appropriately viewed through the backdrop of the landmark Supreme Court cases of Hanover Shoe, Illinois Brick, and ARC America Corp. In Hanover Shoe, the Supreme Court barred antitrust defendants from using the pass through defense except in limited circumstances. Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 494, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). Thus, direct purchaser defendants cannot limit their liability by showing that direct purchaser plaintiffs were not injured and had no damage claim because they passed on the price increase they sustained to indirect purchasers. Id. In Illinois Brick, the Supreme Court addressed the other side of the same coin, specifically, whether an indirect purchaser may offensively use a pass-on theory to show antitrust injury in a federal antitrust claim, despite the fact that a pass-on theory may not be used defensively. Illinois Brick Co. v. Illinois, 431 U.S. 720, 726, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). The Supreme Court rejected this argument, holding that only direct purchasers have standing to assert antitrust injury for the purposes of Section 4 of the Clayton Act. See id. at 728-29, 97 S.Ct. 2061. Thus, it is clear that generally only direct purchasers can recover under federal antitrust law and that no pass through defense exists under federal antitrust law.
Illinois Brick, however, did not foreclose states from allowing indirect purchaser actions. Nineteen states, including Michigan, and the District of Columbia passed (or already had in place) Illinois Brick repealer statutes that permitted indirect purchasers to collect damages in private antitrust lawsuits. PL's Mem. at 3. In California v. ARC Am. Corp., the Supreme Court upheld these repealer statutes, finding that Congress chose not to apply its Supremacy Clause power to preempt the statutes, and that the statutes did not conflict with federal law. California v. ARC Am. Corp., 490 U.S. 93, 101, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989).
The Michigan Legislature passed an Illinois Brick repealer statute in 1984 when it enacted MARA subsection 8(2) which states: *3 Any other person threatened with injury or injured directly or indirectly in his or her business or property by a violation of this act may bring an action for appropriate injunctive or other equitable relief against immediate irreparable harm, actual damages sustained by reason of a violation of this act, and, as determined by the court, interest on the damages from the date of the complaint, taxable costs, and reasonable attorney's fees. If the trier of fact finds that the violation is flagrant, it may increase recovery to an amount not in excess of 3 times the actual damages sustained by reason of a violation of this act.
Mich. Comp. Law § 445.778(2).
The statute is silent as to whether a pass through defense is permissible. Kellogg claims that it is not and that all evidence concerning whether Kellogg passed on the overcharges should be precluded. Defendants argue that the MARA permits the recovery of "actual damages" only and, therefore, that Kellogg must affirmatively show the amount of actual loss suffered not including any portion of the overcharge passed on in the chain of distribution. This is an issue of first impression, and this Court, sitting in diversity, is obligated to act as Michigan's Supreme Court would act if given the instant issue for determination.

II. DISCUSSION
Kellogg's primary argument rests on the omission of pass through language in § 8(2) of the MARA. As stated above, the statute provides standing for indirect purchasers to bring suits against antitrust defendants, but does not explicitly provide for a pass through defense. Kellogg argues that the Michigan legislature intentionally omitted pass through language to prohibit defendants from asserting such a defense, in both direct and indirect purchaser actions. Kellogg reasons (1) that language adopted by other states, on which Michigan could have modeled its own law, was available to the Michigan legislature at the time MARA was enacted but was nevertheless not used; and, (2) that Michigan's principles of statutory construction prohibit reading such a defense into the statute. The Court will briefly address each argument in turn.
As to the first argument, Kellogg points out that five of twenty jurisdictions allowing for indirect purchaser claims explicitly provide a pass through defense. Three statutes providing for a pass through New Mexico, Hawaii, and the District of Columbiawere enacted prior to Michigan's 1984 amendment (repealing Illinois Brick). PL's Mem. at 6-7.[1] If the Michigan *4 legislature wanted to provide defendants with a pass through defense in civil antitrust litigation, Kellogg argues, they could have followed the language of the statutes in these jurisdictions. PL's Mem. at 6-7. The same argument is made with respect to duplicative recovery provisions passed in other states. Kellogg points out that there are seven jurisdictions (Idaho, Illinois, Minnesota, Oregon, Rhode Island, South Dakota, and Vermont) in which the statutes provide that the court shall not allow, or may take steps to avoid, duplicative recovery. Id. Kellogg reasons that given the plain unambiguous language of the Michigan statute, there is no pass through defense under Michigan law or prohibition on duplicative recovery.
Beyond logic, Kellogg offers little to support this theory, and the opposite conclusion can equally be supported with similar logic. First, of the twenty repealer jurisdictions, the majority (twelve) either allow a pass through defense or prohibit double recovery to limit liability to indirect purchasers. Second, of the eight jurisdictions that do not contain express limitations on liability, no jurisdiction expressly prohibits a pass through defense.[2] Third, according to Kellogg, only two states (Minnesota and Wisconsin) have not allowed a pass through defense as a result of judicial interpretation.
In essence, Kellogg is asking this Court to follow a rule adopted by only two of twenty states, where the rulings in those two states are not closely analogous (Minnesota) or not authoritative (Wisconsin). It is not difficult to argue, however, that the proper course would be to follow the majority of states, and that this Court should judicially interpret what has been legislatively provided in other jurisdictionsa provision for a pass through defense and/or a limit on duplicative recovery.
Kellogg also argues that case law from neighboring jurisdictions suggests that the MARA should be interpreted not to include a pass through defense for an indirect purchaser cause of action. Specifically, Kellogg relies on cases from Minnesota and Wisconsin, both of which have Illinois Brick repealer statutes similar to Michigan's.[3] In Humphrey, the Minnesota Supreme Court held that "it was the intent of the Minnesota legislature to abolish the availability of the pass through defense by specific grants of standing within statutes designed to protect Minnesota citizens from sharp commercial practices." State ex. rel. Humphrey v. Philip Morris Inc., 551 N.W.2d 490, 497 (Minn.1996). The *5 court based its ruling on an analysis of the legislative history of Minnesota's Illinois Brick repealer statute. Kellogg, however, has pointed to no relevant Michigan legislative history which would mandate a similar outcome.
Kellogg also offers an unpublished Wisconsin Circuit Court opinion in support of its theory. In K-S Pharmacies, Inc. v. Abbott Labs., the Wisconsin Circuit Court analyzed a statute similar to Michigan's antitrust statute which did not expressly provide a pass through defense, nor did any Wisconsin authority indicate that a pass through defense was appropriate. K-S Pharmacies, Inc. v. Abbott Labs., No. 94CV002384, 1996 WL 33323859 (Wis.Cir. 1996). The court ruled that in the absence of direct or indirect authority, the statute should not be read as creating one, and, therefore, no pass through defense would be afforded. K-S Pharmacies, 1996 WL 33323859, at *12. The Court does not find this a sufficient basis to support a ruling that Michigan's antitrust law precludes a pass through defense for indirect purchaser actions. In this case, there is indirect support for the notion that Michigan's policy is to limit recovery for loss to actual damages.
Respecting Michigan principles of statutory interpretation, Kellogg asserts that such principles should lead this Court to conclude that a pass through defense is unavailable under the MARA. Kellogg cites what it considers to be two general maxims of Michigan statutory interpretation: first, that "a court may read nothing into an unambiguous statute," see Roberts v. Mecosta County Gen Hosp., 466 Mich.57, 642 N.W.2d 663, 667 (Mich.2002); and, second, that statutes intending to benefit a certain class of plaintiffs should be liberally construed in favor of the benefitted class, see Dudewicz v. Norris-Schmid, Inc., 443 Mich. 68, 503 N.W.2d 645, 651 (1993). These arguments are not persuasive.
In Mecosta County Gen. Hosp., the Michigan Supreme Court addressed principles of statutory construction under Michigan law:
[[T]he foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. To do so, we begin with ... the language of the statute. If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.
PL's Mem. at 7 (citing Mecosta County Gen. Hosp., 642 N.W.2d at 667 (emphasis added) (citations omitted)). The principles noted above shed no light on the issue before the Court. The principle that a "court may read nothing" into a statute stands on the initial premise that language of the statute is "clear and unambiguous." Rather than unambiguous language, we have no language from which to decipher legislative intent. Kellogg has offered no guidance for the Court as to how a Michigan court would interpret an apparent omission by the legislature as opposed to how a court should interpret a statutory term with two possible meanings as was the case in Mecosta County Gen. Hosp.
Kellogg next argues that based on Michigan principles of statutory construction, the statute in question should be interpreted liberally in favor of the plaintiffs. PL's Mem. at 7 (citing Dudewicz, 503 N.W.2d at 647). The question presented in Dudewicz was whether Michigan's Whistleblowers' Protection Act ("WPA") was intended to protect employees who are fired for reportng *6 violations of the law by fellow employees. Analyzing the legislative history of the WPA, the Michigan Supreme Court held that "the Legislature intended the protection to apply to employee reports of any and all violations of law by either employers or fellow employees." Id. at 648. As indicated above, no such legislative history is offered with respect to the MARA. Further, there is nothing in the Dudewicz decision that suggests Michigan follows a broad rule of statutory construction as Kellogg suggests.
In opposing Kellogg's motion, the defendants do not address the conspicuous absence of pass through defense language in MARA. Instead, pointing out that § 8(2) of the MARA authorizes recovery of "actual damages," the defendants go on to analyze Michigan damages law. The defendants thus frame the issue as how Michigan has defined "actual damages" in different circumstances and argue that actual damages should mean actual loss. Defs.' Mem. at 5-6.
First, defendants argue that "actual damages" under the MARA are measured by actual loss. Defendants argue that the purpose of damages in Michigan is "to make the injured party whole for the actual losses suffered," and so "the amount of recovery for such damages is inherently limited by the amount of the loss; the party may not make profit or obtain more than one recovery." McAuley v. Gen, Motors Corp., 457 Mich. 513, 578 N.W.2d 282, 285 (1998). In McAuley, the Michigan Supreme Court addressed the issue of double recovery. The plaintiff had sued General Motors ("GM") and the Michigan Employment Security Commission ("MESC") under the Michigan Handicappers' Civil Rights Act. The parties mediated the matter, rejecting the result. The case went to verdict where the plaintiff was awarded $15,000 in damages and $25,281.25 in attorney fees. After judgment for the $40,281.25 total, plaintiff moved for mediation sanctions pursuant to Mich. Ct. R. 2.403(0) to recover attorney fees. Id. at 283-84.
Despite the clear language of Mich. Ct. R. 2.403(0), the court denied plaintiff attorney fees under the mediation statute. The court reasoned that (1) the attorney fee provisions were intended to relieve the prevailing parties of the reasonable costs of litigation, and (2) there was no support in the language of the statute to conclude either that attorney fees were to be imposed as a penalty, or that a party could recover an amount in excess of a reasonable attorney fee. Id, at 285.
Although the issue of attorneys' fees clearly distinguishes McAuley from the instant case, the McAuley court actually spoke of attorney fees in compensatory terms:
It is well established that generally only compensatory damages are available in Michigan and that punitive sanctions may not be imposed. Because the purpose of compensatory damages is to make the injured party whole for the losses actually suffered, the amount of recovery for such damages is inherently limited by the amount of the loss; the party may not make a profit or obtain more than one recovery. That an award of attorney fees is typically compensatory in nature is illustrated by the wellestablished body of law holding that a litigant representing himself may not recover attorney fees as an element of costs or damages under either statute or a court rule because no attorney fees were incurred.
McAuley, 578 N.W.2d at 285 (citations omitted). The Court finds this language persuasive. The additional language regarding the purpose of compensatory damage is persuasive in that (1) the court is *7 speaking about compensatory damages in general terms,[4] and (2) the court places a specific limitation on compensatory damages in general, confining them to "the amount of actual loss." The language of McAuley aptly supports defendants' argument that Michigan statutes providing for the recovery of actual damages have always limited a plaintiffs recovery to the amount the plaintiff was actually injured, even where the assessment of that amount may be complex or difficult. The Court will adopt this reasoning in interpreting the "actual damages" provision of the MARA.
Defendants contend that the legislative history of the MARA supports such an interpretation. The Michigan Legislature commented that "[p]rosecution of an antitrust action is a highly technical and complex matter, so there is little likelihood that large numbers of these actions would be initiated by individual citizens, even with the provision of damages for indirect injury." H.R. Leg. Anal. Sec, Analysis of H.B. 4994 As Enrolled, 1984 Pub. Acts 274, at 3-4 (Mich. Jan 14, 1985), reproduced as Kellogg Mem. Ex. 1. It appears from this passage that the Michigan Legislature intended to (1) give all plaintiffs, including indirect purchasers, access to antitrust litigation to the extent that they suffer damage, but (2) limit the effect of such a rule via the practical boundaries facing potential indirect purchaser litigants. The Legislature noted the unlikelihood that such litigation would proceed, because the less direct the injury, the more difficult to prove damages. Although the Court does not find the legislative history extremely persuasive, under the backdrop of Michigan damages principles which generally limit damages to compensation for actual loss, it not difficult to infer that the Michigan Legislature's intent was to force indirect purchaser plaintiffs to fend for themselves in litigation. In the antitrust context this means handling defensive counter-arguments of pass through.
Defendants argue that Kellogg's theory that a pass on defense is not authorized by the MARA would create a scenario of unlimited multiple liability for antitrust defendants, and, that unlimited multiple liability is inconsistent with Michigan's rejection of punitive damages and the MARA trebling provision. See Thompson v. Paasche, 950 F.2d 306, 314 (6th Cir. 1991) ("Under Michigan law ... punitive or exemplary damages cannot be awarded where actual damages are sufficient to make the plaintiff whole."). Defendants further argue that recovery without limitation at all levels of the distribution chain would unjustly enrich plaintiffs beyond their "actual damages" and would punish the defendants in contravention of Michigan policy. While noting that defendants have overstated the potential problem as "unlimited multiple liability" due to the difficulty in proving an indirect purchaser case, the Court finds defendants' arguments persuasive.
Support for this conclusion is found in the MARA itself and in analogous case law. The MARA provides that "if the trier of fact finds that the violation is flagrant, it may increase recovery to an amount not in excess of 3 times the actual damages sustained." Mich. Comp. Laws § 445.778(2) (2002). This is another indication that the Michigan Legislature intended *8 to limit damages and to impose damages beyond actual damage only in limited circumstances. Similarly, in Hicks v. Ottewell, the Michigan Court of Appeals prohibited recovery of punitive damages on grounds that plaintiffs would be unjustly enriched well beyond their actual damages. Hicks v. Ottewell, 174 Mich.App. 750, 436 N.W.2d 453, 456 (1989).
Kellogg correctly points out that defendants cite no authority which links the trebling provision with unjust enrichment by plaintiffs. Absent specific authority however, and in light of Michigan's policy against punitive damages, this argument provides some logical support for defendants' theory and makes Kellogg's proposed result less likely. Moreover, defendants do support their argument on a slightly different point, citing cases that suggest that Michigan courts have tried to prevent potential double recovery awards. See, e.g., Rafferty v. Markovitz, 461 Mich. 265, 602 N.W.2d 367, 369 (1999); Sizemore v. Smock, 430 Mich. 283, 422 N.W.2d 666, 671 (1988).
Kellogg counters that "multiple liability is authorized by the Supreme Court" in ARC America. PL's Mem. at 11. While that may be true in theory, Kellogg does not provide any Michigan authority to support its contention that Michigan has endorsed a system of unlimited multiple recovery.
Kellogg argues in the alternative that if there is a pass through defense, than it is an affirmative defense. The Court agrees with Kellogg and finds support for this in the recent decision in A & M Supply Co. v. Microsoft Corp., 252 MicLApp. 580, 654 N.W.2d 572. In A & M, the court held that a class of indirect purchasers of Microsoft products could not be certified to pursue MARA damage claims. Id. Although in the context of reviewing a grant of class certification and not discussing downstream indirect pass through, the Michigan Court of Appeals, addressed "injury" in an indirect purchaser claim under the MARA and specifically what must be proven by the plaintiff. The court stated the following in adopting the construct offered by Microsoft:
[A] plaintiff must first prove that the prices the defendant charged the direct purchasers were consistently higher than the prices it would have charged in a competitive environment. We label this an "overcharge" requirement. Second, the plaintiff must prove that the overcharge, or some portion thereof, passed through the chain of distribution to indirect purchasers. We label this a "pass-on" requirement. We agree with Microsoft that proving overcharge and pass-on are essential to succeeding in an indirect purchaser suit under MARA, and therefore adopt this construct.
A & M Supply, 252 Mich.App. 580, 654 N.W.2d 572, 584 (emphasis in bold added). Thus, the court identified two elements overcharge and pass-on (or, perhaps more clearly stated, upstream pass-on). There is no mention that an indirect purchaser plaintiff must prove that it did not pass-on the overcharges to downstream indirect purchasers. As a result, this Court will not impose such a burden on Kellogg. This taken together with the Court's conclusion that defendants may offer an affirmative pass-on defense most logically effectuates what appears to this Court to be the goals of MARA and the policy in Michigan to limit actual damages for injury.
In sum, while the Court acknowledges that the MARA does not explicitly provide for a pass through defense against indirect purchaser claims, the Court is persuaded that Michigan law only permits the recovery of "actual damages" for antitrust claims. As such, in order to give proper effect to the term "actual damages" under *9 the MARA, the Court finds that defendants can challenge plaintiffs damage estimates with a pass through defense. To be clear, the Court finds that this is an affirmative defense. The Court finds this approach to be consistent with the MARA and Michigan's policy of limiting damages to actual loss.

III. CONCLUSION
For the foregoing reasons, Kellogg's Motion in Limine to exclude all evidence pertaining to any purported downstream pass through of defendants' conspiratorial overcharges as irrelevant under the Michigan Antitrust Reform Act is denied. The Court finds that such evidence may be relevant as an affirmative defense by defendants to show that Kellogg did not suffer "actual damages" as required by Michigan antitrust law.

ORDER

RE: Plaintiff Kellogg Company's Motion in Limine to Preclude the Evidence that Kellogg Passed on Any Indirect-Purchaser Overcharges
Pending before the Court is Plaintiff Kellogg Company's ("Kellogg") Motion in Limine to exclude all evidence pertaining to any purported downstream pass through of defendants' conspiratorial overcharges as irrelevant under the Michigan Antitrust Reform Act. Kellogg claims that evidence of any purported pass through of overcharges is irrelevant under the Michigan Antitrust Reform Act as it is not either an affirmative defense or an element of the plaintiffs damages claim. The remaining Defendants in this action, Degussa and Lonza, oppose Kellogg's motion. Upon careful consideration of the motion, opposition, reply and oral arguments, it is hereby
ORDERED that Kellogg's motion is DENIED. The Court finds that evidence of pass through may be relevant to an affirmative defense by defendants' that Kellogg did not suffer "actual damages" as required under Michigan antitrust law. The Court will not, however, require that Kellogg prove a lack of downstream pass through as an element of its damages claims.
SO ORDERED.
NOTES
[1] The relevant language in each states' statute is as follows:

New Mexico provides in N.M. Stat. Ann. § 57-1-3 (1979) that "[i]n any action under this section, any defendant, as a partial or complete defense against a damage claim, may, in order to avoid duplicative liability, be entitled to prove that the plaintiff purchaser or seller in the chain of manufacture, production, or distribution who paid any overcharge or received any underpayment, passed on all or any part of such overcharge or underpayment to another purchaser or seller in such chain."
Hawaii provides in Haw.Rev.Stat. §§ 480-3, 480-13, and 480-14 (1980) that "in class actions and de facto class action lawsuits, . .. defendant shall be entitled to prove as a partial or complete defense to a claim for compensatory damages that the illegal overcharge has been passed on or passed back to others who are themselves entitled to recover so as to avoid the duplication of recovery of compensatory damages."
The District of Columbia provides in D.C.Code Ann. § 28-4509 (1981) that "a defendant shall be entitled to prove as a partial or complete defense to a claim for damages that the illegal overcharge has been passed on to others who are themselves entitled to recover so as to avoid duplication of recovery of damages."
[2] That is to say Kellogg has not presented evidence in its memorandum of such an express provision in any of these eight jurisdictions. No independent analysis of the full language of each state's statute has been performed.
[3] The relevant damage provision of Minnesota's antitrust law reads:

Any person, any governmental body, or the state of Minnesota or any of its subdivisions or agencies, injured directly or indirectly by a violation of sections 325D.49 to 325D.66, shall recover three times the actual damages sustained, together with costs and disbursements, including reasonable attorneys' fees. In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant.
Minn.Stat. § 325D.57.
The relevant Wisconsin provision reads: Except as provided under par. (b), any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefor and shall recover threefold the damages sustained by the person and the cost of the suit, including reasonable attorney fees. Any recovery of treble damages shall, after trebling, be reduced by any payments actually recovered under s. 133.14 for the same injury.
Wise. Stat. § 133.18
[4] The language of the McAuley decision stands in sharp relief to the Roberts and Dudewicz cases cited by Kellogg; in those cases, as explained above, the Michigan Supreme Court did not seem to be creating a general rule consistent with what Kellogg had purported. In contrast, the McAuley court does, as defendants suggest, speak to compensatory awards in general in announcing the principles quoted.