DUDEWICZ v NORRIS SCHMID, INC

Docket No. 126212. Submitted June 5, 1991, at Lansing. Decided December 16, 1991, at 9:35 A.M. Leave to appeal sought.

Michael L. Dudewicz brought an action in the Saginaw Circuit Court against his former employer Norris Schmid, Inc., for wrongful discharge, alleging that he had been discharged because he had refused to drop criminal assault charges against a fellow employee and that his discharge for that reason was contrary to public policy and violative of the provisions of the Whistleblowers' Protection Act. The trial court, Robert S. Gilbert, J., granted the defendant's motion for summary disposition with respect to the public policy count, finding that the public policy exception to the right to fire an employee at will was not applicable to the facts of the case. Following the close of the plaintiff's proofs, the court granted the defendant's motion for a directed verdict, holding that the Whistleblowers' Protection Act was not applicable. The plaintiff appealed.

The Court of Appeals *held:*

1. The right to bring a criminal complaint against a fellow employee is the type of protected right necessary to invoke the public policy exception to the right of an employer to discharge an employee at will. The trial court erred in granting summary disposition for the defendant with respect to the public policy count.

2. The Whistleblowers' Protection Act is applicable in situations where an employee reports to a law enforcement agency the criminal act of a fellow employee; it is not limited merely to situations where an employee reports a violation of a law or regulation by the employer. The trial court erred in granting the motion for a directed verdict with respect to the count based on the Whistleblowers' Protection Act.

Reversed.

1. MASTER AND SERVANT — WRONGFUL DISCHARGE — PUBLIC POLICY.
The discharge of an employee at will because of the employee's

REFERENCES

Am Jur 2d, Master and Servant § 48.5.

Modern status of rule that employer may discharge at-will employee for any reason. 12 ALR4th 544.

filing of a criminal complaint against a fellow employee or refusal to withdraw such a charge is an act that is contrary to public policy and is sufficient to establish a prima facie claim of wrongful discharge.

2. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT.

The discharge of an employee at will because of the employee's filing of a criminal complaint against a fellow employee constitutes a violation of the prohibition of the Whistleblowers' Protection Act of termination for reporting to any public body a violation of any law or regulation; the provisions of the act are not limited to situations in which an employee reports a violation of a law or regulation by the employer (MCL 15.361 *et seq.*; MSA 17.428[1] *et seq.*).

*Jensen, Smith & Clark, P.C.* (by *Peter C. Jensen*), for the plaintiff.

*Smith & Brooker, P.C.* (by *Robert A. Jarema*), for the defendant.

Before: CAVANAGH, P.J., and HOLBROOK, JR., and CYNAR,* JJ.

HOLBROOK, JR., J. In this wrongful-discharge case, plaintiff sought to be reinstated to his former position and to receive full back wages, including monthly bonuses, and attorney fees. On December 18, 1989, defendant's motion for partial summary disposition was granted with respect to the count that claimed plaintiff's discharge violated public policy. The parties then went to trial on plaintiff's claim that his discharge violated the Whistleblowers' Protection Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.* Following the close of plaintiff's proofs, the trial court granted defendant's motion for a directed verdict. The order granting this motion was entered January 5, 1990. Plaintiff now appeals as of right. We reverse.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Plaintiff was employed as a parts manager for defendant, an automobile dealership. Plaintiff testified that on November 4, 1987, he was manhandled when another employee, the service manager, reached over the counter and grabbed plaintiff by his shirt collar, breaking a gold chain and several buttons on plaintiff's shirt. That day, plaintiff informed defendant's new car sales manager about the incident. Plaintiff also filed criminal charges against the service manager with the Midland County Prosecutor, alleging assault and battery.

Plaintiff testified that on December 1, 1987, he was called to the office of Sam Norris, owner of defendant, and was told by Mr. Norris to drop the charges or be fired. Plaintiff was also told to leave the premises. Plaintiff left the premises believing that he had been fired but could regain his job if he decided to drop the charges against the service manager. Plaintiff then contacted an attorney, who told him to return to work. Plaintiff did so on December 3, 1987, but was told by Mr. Norris that he had quit and had to leave the premises or the police would be called. Plaintiff told Mr. Norris he had not quit and would leave only if given a statement of termination. The police were then called, and plaintiff was escorted from the premises.

Plaintiff first argues that it is a violation of public policy for an employer to fire an employee who files a criminal charge against a supervisor for an assault that occurred during the course of employment. We agree.

A motion for summary disposition under MCR 2.116(C)(8) should be reviewed to determine whether the claim is so clearly unenforceable that as a matter of law no factual development could possibly justify a right of recovery. *Scameheorn v*

*Bucks,* 167 Mich App 302, 306; 421 NW2d 918 (1988).

The day before trial, the trial court granted defendant's motion for partial summary disposition. A colloquy between the court and plaintiff's counsel indicates that plaintiff's attorney believed that the trial court was dismissing the "public policy" count on the basis that the Whistleblowers' Protection Act provided the exclusive remedy. Plaintiff's counsel moved for reconsideration on the basis that the public policy exception to an employer's right to discharge at will an employee not covered by contract provided a ground for relief separate from that provided by the act. The court declined to rule on the motion for reconsideration until after receiving proofs. Following plaintiff's proofs, the court denied plaintiff's motion for reconsideration and granted defendant's motion for a directed verdict on the basis that the Whistleblowers' Protection Act was not applicable to the case. The court stated that it had earlier dismissed the public policy count because it considered the public policy exception to discharge to be inapplicable to the instant case, not because it believed the Whistleblowers' Protection Act was the exclusive remedy.

The public policy exception to discharge in an employment at will situation was introduced in *Sventko v Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976), where the discharge of an employee in retaliation for filing a workers' compensation claim was found to be against public policy. In *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692; 316 NW2d 710 (1982), the Supreme Court elaborated on this exception. The *Suchodolski* Court first recognized prohibitions against discharging employees who act in accordance with some explicitly granted statutory right or duties.

The Court referred to four such statutes that granted explicit rights: the Civil Rights Act, the Handicappers' Civil Rights Act, the Occupational Safety and Health Act, and the Whistleblowers' Protection Act. *Id.,* p 695.

The Court also recognized a "sufficient legislative expression of policy to imply a cause of action for wrongful termination, even in the absence of explicit prohibition on retalitatory discharges." *Id.* An implied cause of action for discharge exists in two situations: first, when a discharge occurs because an employee refuses to violate a law in the course of employment, and second, when "the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment." *Id.,* p 696.

Defendant argues that plaintiff's statutory right to bring a criminal complaint against a fellow employee does not come within the Court's meaning of a "well-established legislative enactment." We strongly disagree. Defendant argues that there must be a nexus between the statute violated and the employment relationship and points to the four statutes enumerated in *Suchodolski* as examples of this type of statute. Defendant argues that the *Sventko* opinion required a nexus between the statute violated and the employment relationship. Our reading of that case, however, reveals no such requirement. The discussion by the Supreme Court in *Suchodolski* did note four statutes that gave explicit rights to employees. But the discussion went on to focus on implied causes of action, showing that the four statutes mentioned by the Court were not meant to be an exhaustive description of the public policy exception. In *Suchodolski,* the plaintiff sought to establish a public policy exception based on the regulation of the accounting system of public utilities. The Supreme Court

rejected this claim on the basis that the statute regulating the accounting systems of utilities was not aimed at conferring rights on an employee. *Suchodolski, supra,* p 696. Thus, the central requirement of the public policy exception is that there be an expressed legislative enactment that gives an employee an individual right, not that there be a direct nexus between the purpose of the statute and the employment relationship.

This view finds support in the case of *Pratt v Brown Machine Co,* 855 F2d 1225, 1237 (CA 6, 1988). In *Pratt,* the plaintiff was discharged for refusing to discontinue an investigation into harassing phone calls that he was receiving. The district court found a violation of public policy because the employer's action conflicted with Michigan's compounding and aiding and abetting statutes. In *Pratt, supra,* p 1236, the district court stated:

> The public policy is the same, whether the underlying criminal offense is the maker [sic] of obscene phone calls or bank robbery or arson or any other crime. It matters not whether one of its employees or some other person is suspected of having committed the crime.

In affirming the decision of the lower court, the Sixth Circuit Court of Appeals stated that, for the public policy exception to exist, "[i]t is sufficient that the company requested the plaintiff to drop his investigation into criminal wrongdoing, and terminated him for his refusal to do so." *Id.,* p 1237. This view is not contradictory to the language of existing case law and serves the purpose of the public policy exception. It serves " 'what is naturally and inherently just and right between man and man.' " *Skutt v Grand Rapids,* 275 Mich 258, 264; 266 NW 344 (1936), quoting *Pittsburgh,*

*C, C & St L R Co v Kinney,* 95 Ohio St 64; 115 NE 505, 507 (1916). To allow the discharge of an at-will employee because of a choice to file a criminal complaint against a fellow employee would force a choice between justice and livelihood. It is the public policy of this state to protect its citizens from such an onerous choice. The trial court's decision that the public policy exception did not apply to the instant case was erroneous, and the partial summary disposition for defendant is reversed.

Defendant correctly points out that plaintiff may have to choose the remedy of the Whistleblowers' Protection Act, rather than the remedy of the public policy exception to an employer's right to terminate an at-will employee, as the exclusive remedy available in this case. *Covell v Spengler,* 141 Mich App 76, 83; 366 NW2d 76 (1985). However, the trial court expressly stated that it had not granted the motion for summary disposition on the basis that the Whistleblowers' Protection Act provides the exclusive remedy; therefore, the consideration of the applicability of the public policy exception to the facts of this case is still proper, and reversal of the partial summary disposition is required.

Plaintiff next argues that defendant violated the Whistleblowers' Protection Act by discharging an employee who filed a formal complaint with a county prosecutor for assault and battery and obtained a warrant for the arrest of an employee. Once this report was filed, plaintiff argues the Whistleblowers' Protection Act became applicable and he should have been protected by it. We agree.

In deciding whether the trial court erred in granting or denying a motion for a directed verdict, this Court reviews all the evidence to determine whether a question of fact existed. In doing

so, we view the evidence in a light most favorable to the nonmoving party and grant every reasonable inference and resolve any conflicts in the evidence in that party's favor. *Stoken v J E T Electronics & Technology, Inc,* 174 Mich App 457, 463; 436 NW2d 389 (1988). However, in the case at bar, the trial court found, on the basis of an interpretation of a statute by an earlier panel of this Court, that plaintiff had failed to present a prima facie case. The determination of what satisfies a prima facie case of a statutory cause of action is a question of law that this Court may determine without deference to the lower court. *Beason v Beason,* 435 Mich 791, 805; 460 NW2d 207 (1990).

The Whistleblowers' Protection Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.,* "provides a remedy to an employee terminated for reporting to any public body a violation of any law or regulation of this state, a political subdivision, or the United States." *Tyrna v Adamo, Inc,* 159 Mich App 592, 599; 407 NW2d 47 (1987). The statute defines "public body" as including "[a] law enforcement agency or any member or employee of a law enforcement agency." MCL 15.361(d)(v); MSA 17.428(1)(d)(v).

The clear language of the statute would seem to include the facts of the case at bar where plaintiff reported a violation of the law to the local prosecutor's office. However, the case of *Dickson v Oakland University,* 171 Mich App 68; 429 NW2d 640 (1988), relied upon by the trial court below, employed the language of a house legislative analysis to conclude that the act was applicable only when an employer was in violation of the law and an employee sought to report the violation. *Id.,* p 71. The trial court indicated that, but for the *Dickson*

ruling, it would not have granted the directed verdict in this case.

We now believe the *Dickson* Court erred in concluding that the purpose of the Whistleblowers' Protection Act was only to protect employees who reported violations of the law by their employers.[1] While appellate courts have a duty to ascertain and effectuate the intent of the Legislature, a house bill analysis prepared before passage of a proposed bill is not persuasive authority of legislative intent embodied in an enacted statute. It is only an analysis and a description of the content of a proposed bill. The language of the bill analysis cited by the *Dickson* Court does not explicitly describe the Whistleblowers' Protection Act as being limited to violations of employers. Rather, the section of the legislative analysis quoted by the *Dickson* Court stated that one reason for the Whistleblowers' Protection Act would be that "employees are naturally reluctant to inform on an employer *or a colleague.*" *Dickson, supra,* p 71. This portion of the analysis could reasonably be read to indicate that violations by fellow employees were also to be considered within the scope of the act.

The Whistleblowers' Protection Act itself does not limit its application only to violations of employers but, rather, states that an employee shall not be terminated for reporting "a violation or suspected violation of the law . . . of this state." MCL 15.362; MSA 17.428(2). When resolving disputed interpretations of statutory language to effectuate the legislative intent, it is presumed that when the language of the statute is clear the Legislature intended the meaning plainly expressed. *Ripley v Drivers Services, Inc,* 151 Mich

---

[1] The author of this opinion was a member of the panel in *Dickson* and now believes that case to have been wrongly decided.

App 91, 94; 390 NW2d 690 (1986). In the case at bar, the language of the statute is inclusive of all violations, not just those of employers. We therefore find that the act is not limited to violations of employers and hold that the trial court erred in granting a directed verdict against plaintiff.

Reversed.