# STATE OF MICHIGAN

# COURT OF APPEALS

CLINTON J. THORN,

        Plaintiff-Appellant,

v

JUDY E. BREGMAN and BREGMAN &
WELCH, ATTORNEYS AT LAW,

        Defendants-Appellees.

UNPUBLISHED
March 1, 2018

No. 338384
Montcalm Circuit Court
LC No. 2017-022285-NM

Before: MURPHY, P.J., and O'CONNELL and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff Clinton Thorn previously filed a products liability lawsuit in federal court, initially pursuing the case as a pro se litigant, but he then retained defendant Bregman & Welch, Attorneys at Law, part way through the federal proceeding. More particularly, defendant Judy E. Bregman handled the federal case, filing a first amended complaint on Thorn's behalf. As reflected in *Thorn v Medtronic Sofamor Danek, USA, Inc*, 81 F Supp 3d 619 (WD Mich, 2015), the federal court granted a motion to dismiss the lawsuit. Unhappy with this result, Thorn filed the instant action, alleging legal malpractice by Bregman in the federal case that caused him to lose the suit. The trial court summarily dismissed Thorn's legal malpractice action under MCR 2.116(C)(8), concluding that Bregman had not acted negligently in representing Thorn in the federal case and that the federal claims were simply not legally viable. Thorn appeals as of right, and we reverse and remand for further proceedings regarding whether Bregman committed malpractice by failing to file a fraud count in the federal lawsuit.

The federal district court in *Thorn*, 81 F Supp 3d 619, issued an extremely thorough published opinion, examining in detail the facts and the law. We incorporate by reference the federal court's opinion for purposes of setting the scene for Thorn's legal malpractice action against Bregman and her law firm. The gist of Thorn's federal lawsuit concerned a medical device used as an alternative in some spinal surgeries to graft a patient's own bone, with Thorn claiming that the designer and manufacturer (hereafter "Medtronic") had acted wrongfully by the off-label promotion of the device, as employed during a medical procedure on Thorn, which allegedly caused him harm. The device's label approved by the Food and Drug Administration (FDA) gave the following description:

The InFUSE[] Bone Graft/LT–CAGE[] Lumbar Tapered Fusion Device consists of two components containing three parts—a tapered metallic spinal fusion cage, a recombinant human bone morphogenetic protein[1] and a carrier/scaffold for the bone morphogenetic protein and resulting bone. The InFUSE[] Bone Graft is inserted into the LT–CAGE[] Lumbar Tapered Fusion Device component to form the complete InFUSE[] Bone Graft/LT–CAGE[] Lumbar Tapered Fusion Device. **These components *must* be used as a system. The InFUSE[] Bone Graft component *must not* be used without the LT–CAGE[] Lumbar Tapered Fusion Device component.** [*Thorn*, 81 F Supp 3d at 621 (emphasis in original FDA label).]

We shall refer to this medical device as "InFUSE." The FDA label further indicated that InFUSE was to be implanted via an anterior approach and that the safety and effectiveness of InFUSE's bone graft component had not been established when employed in surgical techniques other than anterior approaches. *Id.* The FDA label also cautioned that there existed a potential for ectopic or undesirable exuberant bone formation. *Id.* Thorn had spinal surgery in March 2010 through use of InFUSE, but in an off-label manner, i.e., in lumbar surgery using a posterior approach. *Id.* Thorn claimed that "his body produced ectopic and uncontrollable bone growth because . . . InFUSE created bone growth outside of the cage in which it was to be confined and into [Thorn's] spinal column with the ultimate result that his spinal cord was compressed and he suffered intractable pain." *Id.* (quotation marks omitted). Although not discussed in the federal opinion, Thorn complains that InFUSE was only approved by the FDA for use in conjunction with the LT-CAGE, which was designed to prevent rhBMP-2 from seeping into or around the spinal cord, that Medtronic asserted that InFUSE could be safely used with other cylindrical cages, even though they were not substantially equivalent to the LT-CAGE, and that use of InFUSE with other cylindrical cages had not received federal approval establishing the safety and effectiveness of such use. In his legal malpractice complaint, Thorn alleged:

> On March 4, 2010, [Thorn] underwent a posterior lumbar interbody fusion at L5-S1. Upon Medtronic's recommendations, a component of the Infuse device was placed inside the Concord Bullet[2] (a separately FDA approved device made by Dupuy). This newly created device was then surgically implanted in [Thorn's] spine, through the backside (posterior). This caused ectopic bone growth around the spinal cord and nerves crushing/flattening the spinal cord.

The federal court rejected claims of failure to warn, negligence, and gross negligence (state law tort claims) on the basis of federal preemption under the Medical Device Amendments (MDA), 21 USC 360c *et seq.*, to the Food, Drug, and Cosmetic Act (FDCA), 21 USC 301 *et seq.*, regardless of the off-label use. And the federal court found that Thorn's breach of express

---

[1] The bone morphogenetic protein is rhBMP-2. See *Wright v Medtronic, Inc*, 81 F Supp 3d 600 (WD Mich, 2015) (opinion issued on the same day as *Thorn* was issued and by the same federal judge who presided over Thorn's case; the cases generally concern the same type of claims).

[2] The Concord Bullet is another cylindrical cage.

warranty claim was not viable because Medtronic had disclaimed all warranties, with Thorn failing to offer an argument to the contrary. The federal court later denied Thorn's effort to file a second amended complaint to raise a fraud claim, and the United States Court of Appeals for the Sixth Circuit subsequently affirmed that order. *Thorn v Medtronic, Inc*, 624 Fed Appx 433 (CA 6, 2015).

Thorn subsequently filed this legal malpractice suit, and the trial court granted defendants' motion for summary disposition, essentially agreeing with the federal court that the tort claims were preempted by federal law and that Medtronic had disclaimed warranty theories of recovery. The court stated that, as a matter of law, there was no viable warranty claim to be made. The trial court further observed that any fraud claim would have failed, even if Bregman had timely presented such a claim for substantive resolution, given that Thorn knew or should have known of the alleged misrepresentations made by Medtronic prior to his surgery. Accordingly, there was nothing that Bregman could have done to prevent the dismissal of the federal action, and thus she did not commit legal malpractice. The trial court entered an order granting summary disposition in favor of defendants under MCR 2.116(C)(8). Thorn appeals as of right.

We review de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). In regard to MCR 2.116(C)(8), which provides for summary disposition when a "party has failed to state a claim on which relief can be granted," it tests the legal sufficiency of a complaint. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). The trial court may only consider the pleadings in rendering its decision. *Id.* All factual allegations in the complaint must be accepted as true. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380-381; 563 NW2d 23 (1997). "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie*, 465 Mich at 130.

The elements of a legal malpractice action in Michigan are: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the client; (3) an injury that was proximately caused by the negligence; and (4) the fact and extent of the injury alleged. *Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994). The plaintiff has the burden of proving all of these elements in order to prevail. *Id.* at 586. "As in any tort action, to prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury." *Id.* A plaintiff must show that *but for* the attorney's alleged malpractice, the client would have been successful in the underlying lawsuit. *Id.* Stated otherwise, the client seeking recovery from his or her former attorney is faced with the difficult task of proving two cases within a single proceeding – the "suit within a suit" concept. *Id.* at 586-587. To hold otherwise would permit a jury to find a defendant attorney liable on the basis of speculation and conjecture. *Id.*

In this case, the relevant questions are whether Bregman acted negligently in choosing the particular claims pursued in the federal litigation and in how she presented and argued the claims actually selected for litigation. Ultimately, we must decide whether there was a genuine issue of material fact regarding whether Thorn can show negligence on Bregman's part and that but for Bregman's malpractice, he would have succeeded in the federal lawsuit against Medtronic. Thorn, who proceeded below pro se and also does so now on appeal, presents

arguments in a manner that is not entirely conducive to an organized analytical approach, so we will set forth the framework, plugging Thorn's arguments into it.

First, with respect to the state law tort claims and Bregman's handling of them, the federal court rejected the claims on the basis of preemption, and we agree with the trial court that Bregman did not commit malpractice when she failed to successfully counter the preemption argument posed by Medtronic. As best we can construe Thorn's appellate brief, he does not appear to contend that Bregman was negligent in regard to the dismissal of the tort claims and her response to Medtronic's preemption argument. He does seem to suggest that preemption should not apply because InFUSE was not used in the fashion approved of by the FDA. However, the federal court determined that the state law tort claims still succumbed to preemption even with off-label use of InFUSE. To the extent that another federal court may have ruled differently on the preemption issue relative to tort claims and off-label use, see, e.g., *Ramirez v Medtronic, Inc*, 961 F Supp 2d 977 (D Ariz, 2013), it would not justify a conclusion that Bregman committed malpractice here. *Thorn*, 81 F Supp 3d at 627 ("As evidenced by the plethora of supplemental authorities . . ., the reasoning of the *Ramirez* district court has been rejected by numerous district courts, although no appellate court has yet considered the precise issue."). Thorn does not offer a viable argument that Bregman had at her disposal a legal basis to overcome the federal court's preemption ruling.

Second, with respect to Thorn's breach of express warranty claim, he maintains that Bregman should have argued to the federal court: (1) that the warranty disclaimer by Medtronic only applied to use of InFUSE as specifically approved of by the FDA, not the off-label use employed during Thorn's surgery (posterior approach and different cylindrical cage); (2) that Medtronic could not warrant that InFUSE was safe and effective, yet instruct staff to conceal product defects; and (3) that "Bregman should have clearly stated what representations and warranties were made by Medtronic and how those warranties became part of the bargain." On appeal, defendants concede that Bregman did not challenge Medtronic's argument in federal court that the warranty claim was barred by a disclaimer; however, they assert that there was no valid response that could have defeated Medtronic's position.

The trial court determined that there was no viable warranty claim as a matter of law. In *Thorn*, 81 F Supp 3d at 630, the federal court indicated that Thorn alleged that Medtronic had made representations and statements of express warranty and that through its schemes to promote the off-label use of InFUSE, Medtronic had warranted that InFUSE was safe for spinal surgeries. The federal court noted that an adequately pleaded express-warranty claim would survive preemption. *Id*. The court also observed that the FDA label for InFUSE stated that no express or implied warranties were being made and that any implied warranties of merchantability and fitness for a particular purpose were specifically excluded. *Id*. at 631. Medtronic argued that the unambiguous disclaimer defeated any warranty claim and that there was no privity of contract between Thorn and Medtronic. *Id*. The federal court found that Thorn presented no arguments to the contrary and thus waived opposition to Medtronic's motion to dismiss the warranty count. *Id*.

In the process of rejecting Thorn's warranty claim, the federal court cited a litany of federal opinions that stood for the proposition that any warranty had to be specifically made to the plaintiff or his or her physician; references to advertising and marketing materials issued by

Medtronic about off-label products would not suffice. *Id.* at 631-632. Thorn's legal malpractice complaint merely pointed to various articles generated, sponsored, or influenced by Medtronic in which numerous claims were made concerning the purported effectiveness of off-label use of InFUSE, which were later deemed untrue or inaccurate. There were no allegations of any particular warranty, let alone one made specifically to Thorn or his doctors. Absent such a claim or evidence, Thorn could not have succeeded on a warranty claim, even if Bregman posed the various arguments proffered by Thorn. Moreover, in the companion case of *Wright v Medtronic, Inc*, 81 F Supp 3d 600, 617-618 (WD Mich, 2015) (see footnote 1 of our opinion), the plaintiff *did present numerous arguments* in opposing Medtronic's motion to dismiss her breach of warranty claims, yet the federal court summarily dismissed those claims. We conclude that Thorn has failed to allege or show that but for Bregman's negligence, he would have succeeded on his claim of breach of express warranty against Medtronic.

Finally, with respect to the issue of fraud,[3] we initially note that the plaintiff in *Wright* avoided summary dismissal of her fraud claim, with Thorn claiming that Wright later reached a settlement with Medtronic. The federal court in *Wright*, 81 F Supp 3d at 616-617, after explaining that preemption would not bar the fraud claim, ruled as follows:

> The Court is not convinced by Defendants' argument that Plaintiff's fraud claim should nonetheless be dismissed because Plaintiff failed to plead it with the particularity required by Rule 9(b). Plaintiff details how Defendants, from 1998 to the present, sponsored medical literature, conferences, and statements by sales representatives to persuade physicians to use Infuse in dangerous off-label uses, while misrepresenting, downplaying and/or falsifying the seriousness of adverse events resulting from such uses. As another district court observed of a substantially similar complaint, Plaintiff alleged "who" the Medtronic-sponsored authors were, "when" the articles were published, the "content" of the allegedly false articles promoting off-label procedures, and "why" that content was false. In other words, the allegations serve to "state with particularity the circumstances constituting fraud."

> Further, the Court rejects Defendants' argument that the fraud claim must be dismissed because Plaintiff failed to allege an actual representation or omission that was made by Medtronic and relied on by her surgeon. Given the landscape Plaintiff describes, "a course of conduct that promotes Infuse as safe in spite of Medtronic's knowledge that such procedures are high risk and experimental," the Court finds sufficient . . . Plaintiff's additional allegation that Defendants "fraudulently and intentionally misrepresented material and important health and safety product risk information to Plaintiff and Plaintiff's physicians" and that "Plaintiff and her physicians would not have decided to use Infuse without an LT–Cage or INTER FIX Cage had they known of the safety risks related to

---

[3] We note that Thorn does not argue that any other theory of liability should have been pursued by Bregman in the federal action.

Infuse." . . . The Court will therefore deny Defendants' motion as to Count IV. [Citations and quotation marks omitted.]

In Thorn's federal lawsuit, Bregman failed to include a fraud claim in the first amended complaint, and she later attempted to file a second amended complaint in order to add a fraud claim. The federal court denied her motion for leave to file a second amended complaint, citing various procedural reasons for the ruling, none of which concerned the merits or substance of a fraud claim, and indicating that Thorn "omitted fraud claims from his first two complaints, despite having ample opportunity and reason to assess whether one could be asserted in good faith." *Thorn v Medtronic Sofamor Danek, USA, Inc*, unpublished order of the United States District Court for the Western District of Michigan, Southern Division, entered April 6, 2015 (Docket No. 1:13-cv-239). As mentioned earlier, the Sixth Circuit for the United States Court of Appeals affirmed the order. *Thorn*, 624 Fed Appx 433.

Plainly, Bregman's failure to timely pursue a fraud claim could give rise to an action for legal malpractice. In his legal malpractice complaint, Thorn set forth numerous allegations regarding fraud committed by Medtronic that paralleled many of the fraud claims in *Wright*, chiefly, those pertaining to articles generated, sponsored, or influenced by Medtronic in which claims were made concerning the purported effectiveness of off-label use of InFUSE. Defendants argued, and the trial court agreed, that problems with InFUSE were well known and public before Thorn had his surgery, that even a cursory Internet search at the time would have revealed that Medtronic's off-label marketing was the target of an investigation and a lawsuit, that Thorn alleged that he researched InFUSE before the surgery, and that there can be no fraud when a person has the means to determine that a representation was not true. This Court has stated that "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994). More specifically, defendants point to a 2009 investor action against Medtronic for securities fraud tied to illegal promotions of InFUSE for off-label uses, which Thorn referenced in his legal malpractice complaint, along with a Department of Justice Investigation on the matter starting in 2008.

Thorn responds that the Department of Justice closed its investigation in May 2012, finding no wrongdoing by Medtronic, and that it was not until October 2012 – a couple of years after the surgery – that a United States Senate investigation concluded that Medtronic had engaged in fraud regarding promotion of InFUSE and made great efforts to conceal the fraud. Thorn contends that given the fact that federal authorities were still struggling to discover the fraud in 2011 and 2012, it clearly demonstrated that he did not know and could not have known of the fraud at the time of his surgery. We note that the 2012 report from the Senate's Committee on Finance, which Thorn submitted below, stated that the "investigation discovered troubling evidence that Medtronic officials influenced the content of articles in peer-reviewed scientific publications to present InFuse in the best possible light."

The trial court granted summary disposition under MCR 2.116(C)(8); therefore, our focus must be on the pleadings. Thorn's legal malpractice complaint alleged the following:

118.    Plaintiff Clinton Thorn's Medical Records, prior to surgery, in March 2010 demonstrate Dr. Christopher Hulen (Surgeon) instructed . . . Thorn to

read and rely on Medtronic's articles promoting the Infuse (RhBmp-2) component. The medical record demonstrates [that] . . . Thorn became certain about surgical intervention with Rh-BMP-2 only after patient read and relied on Medtronic's affirmations and promises. Additionally, [Thorn] affirmatively states he relied on Medtronic's affirmations of facts and promises.

\* \* \*

120.    In connection with their Infuse products, the Medtronic defendants fraudulently and intentionally misrepresented material and important health and safety product risk information from . . . Thorn and his physicians, all as alleged in this Complaint. [T]horn and his physicians would not have decided to use Infuse without an LT-Cage and place the Infuse posteriorly in a non-FDA approved cage *had they known the safety risks related to Infuse.* [Emphasis added.]

There is no language in Thorn's complaint suggesting that he had any knowledge of the alleged falsehoods in Medtronic-related articles at the time of his surgery, nor are there any allegations indicating that he had the means to determine that the articles were untrue. The complaint's reference to the 2009 securities lawsuit did not state that Thorn knew about the suit before his surgery, and the mere filing of a lawsuit would not have established the falsity of Medtronic's representations. See *Montgomery Ward & Co v Williams*, 330 Mich 275, 284; 47 NW2d 607 (1951) ("They also had for consideration the issue of fraud, either active or constructive, but fraud is not perpetrated upon one who has full knowledge to the contrary of a representation."). The same can be said regarding the Department of Justice *investigation*. Thorn alleged that numerous articles indicated that InFUSE was safe for off-label use, and we are not prepared to conclude that some Internet search, assuming that Thorn even had an obligation to engage in one for purposes of a fraud claim, would have relieved Medtronic from liability for fraud simply because some accusations were beginning to arise about the truthfulness of Medtronic's claims. It would be nonsensical to absolve a party that acted fraudulently merely because the fraudulent conduct was being called into question somewhere in the country and the victim of the fraud perhaps could have discovered it through media research. The trial court erred in determining, *under MCR 2.116(C)(8)*, that Thorn failed to state a claim with respect to Bregman's alleged malpractice relative to her failure to pursue a fraud claim in the federal action; the language of the complaint did not lend itself to a definitive finding that Thorn had the means, prior to the surgery, to determine that Medtronic's assertions about off-label use of InFUSE were untrue.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly