Per Curiam.
 

 Defendant appeals by leave granted from the trial court’s order denying its motion for summary disposition of plaintiff’s claim under the Whistleblowers’ Protection Act (wpa), MCL 15.361
 
 et seq.
 
 We affirm.
 

 Defendant employed plaintiff from 1983 until plaintiff was discharged on September 21, 1998. From 1995 until his termination, plaintiff was the managing director of defendant’s Showcase West Theater in Flint. In October or November 1996, plaintiff began a sexual relationship with Coleen Heathcoat, who was also employed by defendant. After the relationship ended in January 1997, Heathcoat began to make threatening telephone calls to plaintiff at his home, prompting plaintiff to change his telephone number. Heathcoat also complained to plaintiff’s supervisor, Brad Wick, who told plaintiff that he would have to work with Heathcoat in a businesslike manner and advised plaintiff not to let the personal relationship affect his work.
 

 In the fall of 1997, plaintiff and Heathcoat resumed their sexual relationship, which lasted until July 1998.
 
 *581
 
 In August 1998, Heathcoat again made threatening telephone calls to plaintiffs home. At the time, plaintiff had a live-in girlfriend, Linda Ptacek, who was unaware of plaintiff’s sexual relationship with Heathcoat. On August 27, 1998, plaintiff contacted the police, who recommended that plaintiff request a personal protection order (ppo). Plaintiff then requested a ppo to try to stop Heathcoat from calling his home and threatening his girlfriend. Plaintiff admitted that the ppo pertained to Heathcoat’s harassment at his home and did not have anything to do with her conduct at work. On August 31, 1998, Wick met with plaintiff again and offered to arrange a transfer for plaintiff.
 

 During this period, Ptacek contacted a senior vice president at defendant’s corporate office and reported that plaintiff was being subjected to a hostile work environment because of Heathcoat’s conduct and that plaintiff had applied for a ppo. At that point, Cindy Montgomery, an employee from defendant’s headquarters, told plaintiff to go home until she was able to arrive in Michigan to investigate. Plaintiff was assured that he would be paid, but was asked not to have any contact with the theater.
 

 On September 4, 1998, plaintiff went to Heathcoat’s home to ask her why she was harassing him. During a meeting with Montgomery, plaintiff admitted that he had gone to Heathcoat’s home. Although plaintiff did stay away from the theater as requested, Montgomery apparently believed that plaintiff’s contact with Heathcoat violated her instruction. At a meeting on September 21, 1998, Montgomery informed plaintiff that he was terminated. Montgomery admitted that among the factors she considered in recommending
 
 *582
 
 plaintiff’s termination were the second incident of threatening telephone calls by Heathcoat and plaintiff’s relationship with Heathcoat.
 

 In October 1998, plaintiff filed a complaint alleging several claims, including that defendant violated the wpa by discharging him in part because he sought a ppo against Heathcoat.
 
 [1]
 
 Defendant moved for summary disposition of plaintiff’s claims. Regarding the wpa claim, defendant argued that plaintiff was not engaged in a protected activity under the wpa because the necessity for a ppo arose out of a personal affair between plaintiff and the co-worker and that plaintiff neither could show any direct connection between the ppo and defendant’s business nor could claim that his need for a ppo was based on any desire to inform the public on a matter of public concern.
 

 The court granted summary disposition for the defendant with respect to plaintiff’s claims of breach of contract and sexual discrimination; however, the court denied summary disposition with respect to plaintiff’s claims under the wpa and of discharge in violation of public policy. Plaintiff subsequently agreed to dismiss the latter claim. Defendant sought and was granted leave to appeal the trial court’s denial of its motion for summary disposition regarding plaintiff’s wpa claim.
 

 This Court reviews de novo a trial court’s decision regarding a motion for summary disposition.
 
 Baker v
 
 
 *583
 

 Arbor Drugs, Inc,
 
 215 Mich App 198, 202; 544 NW2d 727 (1996). Because the trial court looked beyond the pleadings in deciding defendant’s motion, we review the motion under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a claim. The court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence filed in the action or submitted by the parties in the light most favorable to the nonmoving party.
 
 Quinto v Cross & Peters Co,
 
 451 Mich 358, 362; 547 NW2d 314 (1996); MCR 2.116(G)(5). Summary disposition may be granted if, except with regard to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.
 
 Babula v Robertson,
 
 212 Mich App 45, 48; 536 NW2d 834 (1995).
 

 In order to establish a claim of an unlawful discharge under the WPA, plaintiff was required to show that (1) he was engaged in protected activity as defined by the act, (2) the defendant discharged him, and (3) a causal connection exists between the protected activity and the discharge.
 
 Chandler v Dowell Schlumberger Inc,
 
 456 Mich 395, 399; 572 NW2d 210 (1998). A person is engaged in “protected activity” under the WPA where the person (1) reports a violation or suspected violation of a law or regulation to a public body, (2) is about to report such a violation to a public body, or (3) is asked by a public body to participate in an investigation.
 
 Id.)
 
 MCL 15.362.
 

 The principal issue in this case is whether plaintiff was involved in a protected activity, as that concept is delineated in the WPA, that was causally connected with his discharge from his employment. There is no question that plaintiff reported a violation or sus
 
 *584
 
 pected violation of the law to a public body when he sought the ppo against his co-worker. Moreover, our Supreme Court has held that the wpa protects reports made against a co-worker, not just an employer.
 
 Dudewicz v Norris Schmid, Inc,
 
 443 Mich 68, 74-75; 503 NW2d 645 (1993). However, defendant maintains that the finding that plaintiff engaged in protected activity by requesting a PPO regarding a matter that was not related to defendant’s business is not consistent with the intent behind the WPA.
 

 The wpa was enacted to encourage employees to assist in law enforcement and to protect employees who participate in whistleblowing activities.
 
 Dolan v Continental Airlines/Continental Express,
 
 454 Mich 373, 378; 563 NW2d 23 (1997). The underlying purpose of the act was to protect the public and to promote public health and safety by removing barriers that may interfere with employee efforts to report violations or suspected violations of the law.
 
 Id.
 
 at 378-379.
 

 A plain reading of the wpa reveals that employees who report violations or suspected violations of the law to a public body are entitled to protection under the act. As interpreted, the act provides protection to employees who report violations of law by either their employers or fellow employees. . . . Frequently, a close connection exists between the reported violation and the employment setting, although no such limitation is found in the statute.
 
 [Id.
 
 at 381 (citations omitted).]
 

 In
 
 Dolan,
 
 the plaintiff alleged that she was fired for reporting to the Drug Enforcement Agency the names of two airline passengers who fit a suspect profile after the defendant adopted a policy against employees directly contacting the dea without prior manage
 
 *585
 
 ment approval. The Supreme Court found that the reported violation was sufficiently related to the plaintiffs employment setting to be protected under the wpa, commenting: “This is not to say that only those violations that are connected to the employment setting are contemplated under the WPA, only that the reported violation in the present case was sufficiently connected to the employment setting to be contemplated under the majority opinion in
 
 Dudewicz.” Dolan, supra
 
 at 382.
 

 In
 
 Dudewicz, supra
 
 at 70-71, the plaintiff was assaulted by a co-worker while on the job as the result of the plaintiffs having involved one of the owners of the business in a customer service dispute. The plaintiff filed criminal charges against the coworker and was told to drop the charges or he would be fired. The Supreme Court concluded that the activity at issue, reporting a co-worker’s violation of the Criminal Code resulting from a dispute over the handling of company business, fell within the WPA.
 
 Id.
 
 at 75-76. The Court stated:
 

 Admittedly, a strictly liberal interpretation of the statute without an analysis of legislative intent arguably could lead to an interpretation that would bar discharge of an employee for reporting a crime by anyone under any circumstances. ... However, this is not the case and these are not the facts to test the outer limits of this rather broad statute. In concluding that it was intended to bar a discharge of an employee for reporting a crime by a fellow employee under the circumstances of this case does not begin to test those limits. In saying that, we note that not only was this a crime alleged to have been committed by a fellow employee, but the alleged crime arose out of a work incident at the work site. It is, therefore, very much within the employer-employee setting.
 
 [Dudewicz, supra
 
 at 77-78.]
 

 
 *586
 
 While the appellate courts of this state have opined that there are “outer limits” to a claim under the wpa, neither this Court nor the Supreme Court has defined those outer limits, leaving the issue to be decided case by case. See
 
 Terzano v Wayne Co,
 
 216 Mich App 522, 528-529, 532; 549 NW2d 606 (1996). Although this case presents a close question, we conclude that summary disposition was properly denied. It is apparent that the plain language of the WPA does not limit protected activity to that which has a close connection to the work environment or to the employer’s business practices. MCL 15.362;
 
 Dolan, supra
 
 at 381. Moreover, remedial statutes, such as the WPA, should be “liberally construed in favor of the persons intended to be benefited.”
 
 Dudewicz, supra
 
 at 77. Therefore, we decline to interpret the wpa so as to create a limitation that is not apparent in the unambiguous language of the statute.
 

 Further, the submitted evidence established some connection, albeit a tenuous one, between plaintiff’s request for a ppo and defendant’s employment setting. Plaintiff showed that once he obtained the PPO, it became more difficult for him to work with Heathcoat. Further, there was evidence that, in firing plaintiff, defendant took into account the ongoing problems between plaintiff and his co-worker and how it was affecting defendant’s operations. Even if we were to conclude that the wpa only protects activity that is related to the conduct of the employer’s business, we would find that the evidence in this case meets that test.
 

 Defendant argues that plaintiff obtained the PPO for purely personal reasons, not out of concern for the public and, therefore, was not engaged in a protected
 
 *587
 
 activity, citing
 
 Shallal v Catholic Social Services of Wayne Co,
 
 455 Mich 604, 621; 566 NW2d 571 (1997). However, the facts of
 
 Shallal
 
 are clearly distinguishable from the present case. In
 
 Shallal,
 
 the plaintiff told her agency’s president that she would report his alleged wrongdoing “if [he didn’t] straighten up.”
 
 Id.
 
 at 614. Our Supreme Court found that the threat was sufficient evidence that the plaintiff was “about to report” a violation or suspected violation of the law.
 
 Id.
 
 at 621. However, the Court concluded that the plaintiff failed to establish a causal connection between her actions and her firing because she used the threat of a report to prevent her termination.
 
 Id.
 
 at 622.
 

 [I]t is clear that plaintiff used her own situation to extort defendant not to fire her. . . . Furthermore, it is clear that the decision to fire plaintiff was made before her threat to [the agency president]
 
 and
 
 that plaintiff knew of this decision .... Plaintiff cannot use the whistleblowers’ act as a shield against being fired where she knew she was going to be fired before threatening to report her supervisor. To hold otherwise “would encourage other employees to hold off blowing the whistle until it becomes most advantageous for them to do so. Plaintiff has offered no evidence which suggests that the Michigan Legislature intended the Whistleblowers Act to be used as an offensive weapon by disgruntled employees.”
 
 [Id.
 
 at 622 (citations omitted).]
 

 Although plaintiff’s decision in this case to obtain a PPO may have been motivated by personal reasons, plaintiff did not use his protected activity to extort his employer, as did the plaintiff in
 
 Shallal.
 
 Further, although plaintiff’s primary purpose may have been to protect himself and his girlfriend from harassment, reasonable jurors could conclude that plaintiff was acting in the public’s interest, in addition to his own.
 
 *588
 
 Assuming the truth of plaintiffs assertions, Heath-coat’s threatening telephone calls could constitute aggravated stalking, a felony and a serious public safety issue. See MCL 750.41 li. Moreover, in this case there is evidence of a causal connection between plaintiff’s protected activity and his termination, namely, Montgomery’s admission that plaintiff was discharged because of circumstances surrounding Heathcoat’s harassment.
 

 Accordingly, we believe that the evidence, viewed most favorably to plaintiff, was sufficient to create a genuine issue of fact regarding whether plaintiff engaged in a protected activity for purposes of the wpa. Therefore, the trial court did not err in denying defendant’s motion for summary disposition.
 

 Affirmed.
 

 [1]
 

 Plaintiff also alleged that (1) defendant terminated him in violation of public policy, (2) his discharge was in breach of a contract with defendant under which he could not be terminated without good cause, (3) defendant discharged him because of his gender in violation of MCL 37.2202, and (4) defendant slandered him. Plaintiff later stipulated the dismissal of his slander claim.