# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC A. KRAWCZYK,

          Plaintiff-Appellee,

UNPUBLISHED
April 2, 2015

v

No. 317074
Wayne Circuit Court
LC No. 12-008744-CD

CITY OF DEARBORN, RONALD HADDAD,
and WILLIAM J. LEAVENS,

          Defendants-Appellants.

ERIC A. KRAWCZYK,

          Plaintiff-Appellee,

v

No. 317101
Wayne Circuit Court
LC No. 12-008744-CD

CITY OF DEARBORN, RONALD HADDAD,
and WILLIAM J. LEAVENS,

          Defendants-Appellants.

Before: MURRAY, P.J., and SAAD and HOEKSTRA, JJ.

HOEKSTRA, J. (*concurring in part and dissenting in part*).

I concur in the majority's analysis of plaintiff's tortious interference with a business relationship claim, and I agree that plaintiff's claim under the Whistleblower Protect Act (WPA) should be dismissed in relation to defendant William Leavens individually.[1] I respectfully

---

[1] Although agents of an employer constitute an "employer" for purposes of the WPA, MCL 15.361(b), Leavens, who was not within plaintiff's chain of command, had no authority over plaintiff and as such lacked the authority to suspend plaintiff or to otherwise affect plaintiff's compensation, terms, conditions, location, or privileges of employment. See MCL 15.362; *Wurtz v Beecher Metro Dist*, 495 Mich 242, 250-251 & n 14; 848 NW2d 121 (2014). Because Leavens could not, and did not, undertake the adverse employment actions at issue in this case,

-1-

disagree, however, with the majority's conclusion that plaintiff has failed to present evidence of a causal connection between his protected activities and defendants' act of suspending him from duty and initiating an investigation against him. Because I also believe that plaintiff has presented evidence to rebut defendants' purportedly legitimate reasons for its actions against plaintiff, I would affirm the trial court's denial of defendants' motion for summary disposition in respect to plaintiff's WPA claim against Police Chief Ronald Haddad and the City of Dearborn.

In March of 2012, plaintiff engaged in a number of activities protected under MCL 15.362, including (1) his participation in an investigation against Leavens which had been initiated by another officer, (2) his own independent report of Leavens's purported wrongdoing to the Human Resources department, and (3) plaintiff's reports to his superiors in the police department regarding Leavens's conduct.[2] Plaintiff's complaints against Leavens included assertions that Leavens had made threats of violence against him and that, for example, on the day plaintiff was scheduled to meet with Human Resources, Leavens appeared without explanation outside the home of plaintiff's girlfriend in a manner plaintiff found threatening. Plaintiff's efforts to cooperate in complaints against Leavens were well-known in the police department. Chief Haddad, for example, was interviewed by the Human Resources department in connection with complaints against Leavens and, another of plaintiff's superiors, Commander Jimmy Solomon, asked plaintiff not to file an official complaint with Human Resources, but to instead "keep it in the building." On April 4, 2012, following Leavens's assertion that plaintiff had attempted to extort him, Chief Haddad suspended plaintiff from duty and referred the matter for investigation by the Michigan State Police (MSP), which in turn forwarded its findings to the Wayne County Prosecutor's Office. Following his suspension, plaintiff contacted Human Resources about his complaints against Leavens and he was told that the matter had been put "on hold." Plaintiff's suspension lasted a total of 84 days, following which the prosecutor's office declined to pursue the matter because there was insufficient credible evidence. Plaintiff was thereafter invited to return to his duties.

On these facts, there is, as the majority concludes, no direct evidence that plaintiff's protected activity prompted his suspension and the investigation against him. Aside from direct evidence, however, a plaintiff may establish a causation connection using circumstantial evidence. *Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW2d 634 (2013). To establish causation using circumstantial evidence, there must be more than conjecture or speculation to connect the protected activity and the employer's acts. *Shaw v Ecorse*, 283 Mich App 1, 15; 770 NW2d 31 (2009). The circumstantial evidence must allow a jury to "reasonably infer from the evidence that the employer's actions were motivated by retaliation." *Id.* Circumstances that may be relevant to an inference of retaliation include, for example, evidence that an employer has

plaintiff cannot prevail against Leavens individually on a claim under the WPA and I would therefore reverse the trial court's denial of summary disposition with respect to Leavens.

[2] See *Whitman v City of Burton*, 497 Mich 896; 855 NW2d 746 (2014) (recognizing that a report given because an employee is requested to participate in an investigation is considered protected activity); *Brown v Mayor of Detroit*, 478 Mich 589, 594; 734 NW2d 514 (2007) (concluding police officer's report to the chief of police was a protected activity); *Trepanier v National Amusements, Inc*, 250 Mich App 578, 584; 649 NW2d 754 (2002) ("[T]he WPA protects reports made against a co-worker, not just an employer.").

knowledge of the plaintiff's protected activity, a temporal connection between the protected activity and adverse employment action, evidence than an employer is displeased with a plaintiff's protected activity, and evidence that an employer's actions against the individual were unusual. See *Debano-Griffin*, 493 Mich at 178; *Henry v Detroit*, 234 Mich App 405, 414; 594 NW2d 107 (1999); *Shaw*, 283 Mich App at 15.

Viewing the evidence in this case in a light most favorable to plaintiff, in my judgment, plaintiff has demonstrated the existence of a material question of fact relating to whether his protected activity motivated his employer's adverse employment against him. Although a temporal connection alone does not establish causation, it is evidence of a causal connection, *Shaw*, 283 Mich App at 15, and it is thus notable in this case that much of plaintiff's protected activity occurred in March of 2012 and he was suspended on April 4, 2012. Further, plaintiff's complaints against Leavens were well-known in the department and arguably viewed with disfavor, at least by some. According to plaintiff's deposition testimony, Commander Solomon, for example, attempted to prevent plaintiff from initiating a formal complaint and urged him to instead keep the matter "in the building." Chief Haddad had also been interviewed in relation to complaints against Leavens, and he conceded at his deposition that he knew of the allegations of violence "perhaps before" he suspended plaintiff on April 4, 2012. Following plaintiff's suspension, when plaintiff contacted Human Resources he was informed that the investigation into Leavens had been put "on hold." Compared to defendants' response to plaintiff's complaints against Leavens, defendants' suspension of plaintiff and the referral of the matter to an outside agency may also be construed as unusual. That is, plaintiff had complained of threats of violence and other behavior by Leavens that could potentially be viewed as harassment and at the very least an attempt to prevent plaintiff's cooperation with the investigation by Human Resources, and yet Leavens apparently suffered no negative employment consequences as a result. In contrast, when Leavens brought allegations against plaintiff, the result was a swift suspension and a referral of the matter to an outside agency for investigation and possible criminal penalties. There is no apparent reason for this disparate response given that both complaints involved internal disputes in which other officers would likely be witnesses, which is the very reason that Chief Haddad offered in his letter to the MSP as the reason for requesting investigation by an outside entity relating to Leavens's allegations. Considering these circumstances, a reasonable jury could infer that defendants' actions toward plaintiff were unlawfully motivated by retaliation.

Defendants maintain, in contrast, that, even if plaintiff has made a prima facie case of unlawful retaliation, any adverse employment action taken against plaintiff was legitimate given Leavens's claims of extortion. As the majority explains, defendants may rebut the presumption of retaliation if they offer a legitimate justification for their actions, and defendants are then entitled to summary disposition if plaintiff fails to demonstrate that the employer's legitimate reasons are a mere pretext for unlawful retaliation. *Debano-Griffin*, 493 Mich at 176, 179. "A plaintiff can prove pretext either directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Roulston v Tendercare, Inc*, 239 Mich App 270, 281; 608 NW2d 525 (2000).

Here, much of the same evidence relevant to establishing a causal connection supports plaintiff's assertion that defendants' explanation for their conduct was a mere pretext.

Specifically, the department's disparate response to Leavens's allegations compared to plaintiff's reports, particularly when coupled with the timing of their respective complaints, allows for the conclusion that the motivation for defendants' action was a desire to retaliate against plaintiff. In other words, defendants took no negative action against Leavens in response to plaintiff's reports and yet, while plaintiff's allegations against Leavens remained outstanding, they pursued without hesitation Leavens's sudden claim that plaintiff had attempted to extort him. That defendants' action against plaintiff was motivated by retaliation rather than a real concern that plaintiff had engaged in extortion can also be found in the fact that, ultimately, the outside prosecutor's office declined to pursue charges against plaintiff and plaintiff was welcomed back to work. In these circumstances, a reasonable jury could conclude that Leavens's allegations against plaintiff were plainly spurious and that defendants' decision to pursue Leavens's specious allegations was a mere pretext for an act of unlawful retaliation.[3]

Because I believe that, viewed in a light most favorable to plaintiff, plaintiff has demonstrated the existence of a material question of fact regarding the cause of the adverse employment action in this case, I would affirm the trial court's denial of summary disposition relating to plaintiff's WPA claim against Chief Haddad and the City of Dearborn and remand for further proceedings. See *Debano-Griffin*, 493 Mich at 186; *Shaw*, 283 Mich App at 16.

/s/ Joel P. Hoekstra

---

[3] The majority, in contrast, definitively concludes that by suspending plaintiff the Department and Chief Haddad "behaved quite properly and prudently" in response to "a potentially acrimonious family dispute." I do not doubt that a reasonable jury might well agree with the majority's view of Chief Haddad's motives for suspending plaintiff. But, I do not believe this is the only reasonable conclusion to be drawn from the evidence. Because we are considering a motion for summary disposition, we must view the evidence in a light most favorable to plaintiff and draw all reasonable inferences in his favor. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). Viewed in this light, reasonable minds could differ regarding the conclusions to be drawn from the evidence in this case and thus summary disposition should not have been granted. See *id.*